[Crim. No. 12820.    Second Dist., Div. Two.    Dec. 15, 1967.]

THE PEOPLE, Plaintiff and Respondent, v. PHILLIP CHARLES FORTMAN et al., Defendants and Appellants.

Phillip Charles Fortman and Tim Lawrence Hartman, in pro. per., Harvey Giss and Daniel L. Dintzer, under appointments by the Court of Appeal, for Defendants and Appellants.

Thomas C. Lynch, Attorney General, William E. James, Assistant Attorney General, and Richard D. Huffman, Deputy Attorney General, for Plaintiff and Respondent.

ROTH, P. J.—Appellants were charged by information with one count of robbery (violation of Pen. Code, § 211) and one count of murder (violation of Pen. Code, § 187). They were convicted by a jury of attempted robbery (Pen. Code, § 664) and first degree murder (Pen. Code, § 189). Motions for new trial were denied. The court fixed the penalty for each appellant on the murder charge at life imprisonment. The sentences for attempted robbery as to each appellant were suspended pending appeal and the serving of the murder sentences.

Appellant Fortman appeals from the judgment and order denying his motion for a new trial. The appeal from the order

is dismissed. (Pen. Code, § 1237, subd. 2). Appellant Hartman appeals from the [judgment of] conviction.

On January 29, 1966, at approximately 9 p.m. Charles Cirk, the victim, received injuries from a beating. At 5 p.m. on February 4, 1966, Cirk died.

Numerous witnesses placed appellants at the scene of the crime in Long Beach. Each was wearing one black glove. Some observed appellants kicking the prone figure of Cirk. Another witness testified that he saw one of the appellants hold the victim while the other hit him in the stomach and kicked him. Another witness testified that she saw men of appellant's description kneeling over the victim and appear to search through his pockets. Cirk was seen by several, lying on the ground, badly beaten with his pockets pulled out.

Appellants were arrested at about 9:10 p.m. on January 29. Each was wearing one black glove and the only money which each had, was a one-dollar bill.

Officer Denham talked with the victim shortly after the beating in the emergency room of a hospital. The officer testified that Cirk appeared to be out of breath, taking deep gasps and appeared badly beaten. Twice the victim told the officer that he believed that he was going to die. Cirk said that he had been assaulted at the corner of Third and Locust and then walked south toward the ocean on Locust to the location where the police called an ambulance. He said that, ''That's where the two guys beat and kicked me.'' The victim added that they stole two one-dollar bills from his pants pocket. He said that both assailants were white and that each wore one black glove. At approximately 12:15 a.m., Cirk repeated this story to another police officer.

The victim died on February 4 following surgery performed to relieve pressure on his brain. His death was caused by hemotoma in the brain which was brought on by blows on his head. Cirk had previously suffered a stroke which paralyzed his right arm and impaired his speech and hearing. However, it was testified that this condition by itself does not normally cause the type of hemorrhaging which resulted in the victim's death.

Sergeant McMahan testified that at 2:15 p.m. on February 1, 1966, two days after the arrest, he had a conversation with appellant Hartman at the police station. Prior to questioning, Hartman was advised of his constitutional rights and he was told that the crime could involve the gas chamber. Appellant first said that he could not recall his arrest because he

was too drunk at the time. After further discussion, he stated: "All right. I remember walking, and I seen this guy with a hat on and said, 'Let's roll him.' . . . But I remember going through his pockets, and I didn't get a dime. He didn't have any money. . . ."

Hartman repeated substantially this same statement 45 minutes later to Officer William Stovall.

Hartman testified in his own behalf at trial. He said that he and Fortman had recently arrived from Cleveland by way of Fort Wayne, Indiana and Dallas. On January 29 they worked at the Purple Heart Veteran's Service soliciting contributions and were paid two dollars each. Appellants took their two dollars and bought cigarettes, pooled their money and bought one-half gallon of wine. They went to their hotel and drank the wine. Hartman did not recall leaving the hotel. He did remember that after drinking the wine, he was involved in a fight, but could not recollect where or with whom he fought. He did not remember being arrested nor did he recognize the victim. He denied making any incriminating statements to the police. He stated that he was in pain at the time of his questioning because of a dislocated elbow which he had suffered during his arrest. He said he thought he had been arrested for public intoxication.

Appellant Fortman having been fully advised of his constitutional rights, stated in substance that he had been drinking, blacked out and that all he could remember was seeing an old man lying on the ground. He testified in his own behalf and substantiated much of Hartman's testimony and said that he recalled seeing an old man on the sidewalk and recalled Hartman fighting with someone.

The bookkeeper of the Purple Heart Veteran's Service testified that she gave each appellant two dollars in cash on January 29. She stated that they usually paid in currency although coins were used on occasion.

Appellants contend that the instructions given on the subject of intoxication were prejudicially erroneous.

It is now well established in this state that substantial evidence of mental illness short of legal insanity, is a significant factor in negating the specific legal intent essential to an offense. (*People* v. *Wells,* 33 Cal.2d 330 [202 P.2d 53]; *People* v. *Gorshen,* 51 Cal.2d 716 [336 P.2d 492]; *People* v. *Conley,* 64 Cal.2d 310 [49 Cal.Rptr. 815, 411 P.2d 911].)

Under this rule, if murder is charged and it is shown that the defendant, though legally sane, was suffering from a

diminished mental capacity caused by intoxication, trauma or disease which prevented his acting with malice aforethought or with premeditation and deliberation, he cannot be convicted of murder in the first degree. (*People v. Henderson*, 60 Cal.2d 482, 490-491 [35 Cal.Rptr. 77, 386 P.2d 677].) ▮ If malice is lacking, the defendant cannot be found guilty of an offense greater than manslaughter. (*People v. Conley, supra.*) ▮ When evidence is introduced supporting diminished capacity, the court must, on its own motion, instruct the jury as to its legal effect. (*People v. Henderson, supra*, at page 491.)

Appellants were each convicted of attempted robbery and first degree murder. ▮ If the jury found that the murder was perpetrated during the course of the attempted robbery, findings of malice and deliberation and premeditation were not necessary. (Pen. Code, § 189; *People v. Coefield*, 37 Cal. 2d 865, 868-869 [236 P.2d 570].) ▮ Since appellants' conviction was based on the felony-murder doctrine, failure to have instructed the jury on the diminished capacity rule in respect of first degree murder, would not have constituted error since specific intent is supplied by the robbery and separate proof of an intent to commit murder is not a requisite element to sustain a charge of murder which occurred as part of the robbery. *People v. Ford*, 65 Cal.2d 41, 54-58 [52 Cal.Rptr. 228, 416 P.2d 132].)

▮ Appellants' first degree murder convictions were based on the felony-murder doctrine and not on premeditation and deliberation. Instructions to the effect that first degree murder is chargeable where the killing was perpetrated during the course of a robbery or attempted robbery were properly given. (CALJIC 317 and CALJIC 302-F (revised).) The trial court gave no instructions on premeditation and deliberation and none were requested. The court also gave instructions on manslaughter and in instructing the jury on the definition of second degree murder, references to killing with premeditation and deliberation were deleted. They did include references to killing during the course of a felony.

The statements made to the police by Hartman were the sole evidence of intent and they reveal an intent to commit a robbery and not a murder. Hartman told Sergeant McMahan that before the attack he stated to his accomplice: "Let's roll him." He later told Sergeant Stovall: "I could have said, I could have said, 'Let's roll him.' I could have said,

'Let's see if he has any money.' I just don't remember what I said.''

The prosecution made no attempt to show that an intent to murder the victim was reached by appellants after a period of calculation or reflection.

■ Since no specific intent was necessary for the first degree conviction, failure of the court to give instructions on diminished capacity in respect of murder were harmless.

■ However, instructions on diminished capacity were necessary as to the specific intent to commit robbery. As to this, the court correctly gave CALJIC 78 (revised) and 78-B. ■ Determination of whether appellants had the requisite intent was one for the jury. We are bound to view the evidence most favorably in support of the judgment. (*People* v. *Ford*, 65 Cal.2d 41, 51 [52 Cal.Rptr. 228, 416 P.2d 132].)

■ Appellant Hartman did not argue against or object in the trial to the admission of incriminating statements he made to the police, nor did he present any evidence that they were involuntary. He now contends that the trial court erred in admitting the statements and in failing to instruct the jury on the question of whether they were voluntary.

The prosecution satisfied its burden by laying a foundation as to the free and voluntary nature of the statements. This was shown by the following testimony of Sergeant Stovall, relating to his conversation with Hartman:

''Q. Now, Tim, do you understand that you have a right to an attorney present at all times during this interrogation? A. Yes, sir. Q. Do you understand that you need not make any statement if you so desire? A. Yes, sir. Q. Do you understand that any statement you do make might be used against you in court? A. Yes, sir.''

At the end of the conversation, Stovall testified that the following ensued:

''Q. Tim, has this statement that you have just given us been free and voluntary on your part? A. Yes, sir. Q. Has there been any force or violence, threats been used against you to induce you to make this statement? A. No, sir.''

Hartman did not object to the introduction of his statements at trial and no evidence was presented to show that they were not voluntarily made. The only plausible evidence is appellant's testimony that because of a cast that had been placed on his recently dislocated elbow, his fingers were swollen and he was in pain at the time of his interrogation.

He stated that he was receiving medication for this injury. Hartman also testified that one of the officers told him that the offense could involve the gas chamber. His testimony in this regard is as follows:

"Q. Has anyone said anything to you about gas chamber? A. Yes, sir. He said it could involve gas chamber. Q. Were you frightened? A. Yes, sir, because I—they asked me what I was arrested for. I told them public intoxication as far as I knew. Then they told me. Then Sgt. McMahan was—talked to me about it. That's what I could get. And shook me up pretty bad."

Such evidence falls short of showing that appellant's statement was obtained by inducement or threats or as a result of overbearing police pressure. No evidence was submitted to show that the alleged pain and medication contributed to an involuntary statement and we cannot reasonably draw such an inference. The allegation that he had been threatened with the gas chamber is not borne out by the record. This statement appears to be more in the nature of one informing him of the gravity of the charge than a threat. Thus, we conclude that no issue was raised by appellant on the question of voluntariness.

█ The practice followed in California to determine voluntariness has long been the same as that prescribed in *Jackson* v. *Denno* (1964) 378 U.S. 368 [12 L.Ed.2d 908, 84 S.Ct. 1774, 1 A.L.R.3d 1205]. The issue must be initially raised in the trial court. In the present case, the issue was not raised, either by argument or evidence. The point is without merit.

█ Because the evidence was not in conflict, the trial court correctly decided that there was no issue to submit to the jury. It was therefore not compelled to instruct the jury. (Compare *People* v. *Bevins,* 54 Cal.2d 71, 76-77 [4 Cal.Rptr. 504, 351 P.2d 776]; *People* v. *Eli,* 66 Cal.2d 63, 75-76 [56 Cal.Rptr. 916, 424 P.2d 356].

█ Appellant Hartman argues that he was inadequately represented at trial because his trial counsel failed to raise the above issue and that such failure reduced his representation to a "mockery." We do not agree.

To justify relief on this ground " 'an extreme case must be disclosed' " and " [i]t must appear that counsel's lack of diligence or competence reduced the trial to a 'farce or sham.' " (*People* v. *Ibarra,* 60 Cal.2d 460, 464 [34 Cal.Rptr. 863, 386 P.2d 487].) █ "Defendant has the burden . . .

of establishing his allegation of inadequate representation 'not as a matter of speculation but as a matter of demonstrable reality.' '' (*People* v. *Reeves,* 64 Cal.2d 766, 774 [51 Cal.Rptr. 691, 415 P.2d 35].)

In the present case, appellant has failed to sustain that burden. There was little or no evidence to show that Hartman's statements were not obtained voluntarily. Trial counsel may well have decided that good tactic would be not to raise ''straw'' issues. In *People* v. *Brooks,* 64 Cal.2d 130, the court says at page 140 [48 Cal.Rptr. 879, 410 P.2d 383] : ''In the heat of a trial, defendant's counsel is best able to determine proper tactics in the light of the jury's apparent reaction to the proceedings. Except in rare cases an appellate court should not attempt to second-guess trial counsel.''

Appellant Fortman contends that the trial court erred in admitting the statements of appellant Hartman in the joint trial of both appellants. He argues that the deletions made by the trial judge from the statements Hartman gave to the police did not meet the standards set forth in *People* v. *Aranda,* 63 Cal.2d 518 [47 Cal.Rptr. 353, 407 P.2d 265]. The allegedly incriminating statements consist of the following conversation between Hartman and Sergeant Stovall :

''Q. Tim, you previously stated the first you recall was walking down the street and making a statement something about, 'Let's roll this guy.' Can you recall exactly what you said ?

''A. No, sir, I don't know whether I said it or not. I wasn't sure whether I said it or not.

''Q. What do you think you said ?

''A. I could have said, I could have said, 'Let's roll him.' I could have said, 'Let's see if he has any money.' I just don't remember what I said.'' Fortman contends that the word ''Let's'' implicates him in the crime and constitutes reversible error.

In *Aranda,* the court held that where the prosecution proposed to introduce into evidence an extrajudicial statement of one defendant that implicates a codefendant, the trial court ''can permit a joint trial if all parts of the extrajudicial statements implicating any codefendants can be and are effectively deleted without prejudice to the declarant. By effective deletions, we mean not only direct and indirect identifications of codefendants but any statements that could be employed against nondeclarant codefendants once their identity is otherwise established.'' (*People* v. *Aranda, supra,* at

page 530.) Here, direct and circumstantial evidence was received which linked Hartman and Fortman together before and during the crime. It is not improbable that the word ''Let's'' implicated Fortman. (*People* v. *Aranda, supra.,* fn. 10 at pages 530-531; Compare *People* v. *Massie,* 66 Cal.2d 899, 918-919 [59 Cal.Rptr. 733, 428 P.2d 869].)

Failure to adhere to the *Aranda* procedures, however, constitutes reversible error only if it causes prejudice. (*People* v. *Charles,* 66 Cal.2d 330, 343-344 [57 Cal.Rptr. 745, 425 P.2d 545]; see *People* v. *Massie, supra,* at pp. 919-924.) In the present case, Fortman was identified, both directly and circumstantially by numerous witnesses. Statements by the victim implicated him in the crime. Hartman's use of the word ''let's'' constituted tenuous identification of his codefendant. We find no reasonable probability in this case that the jury would have returned a more favorable verdict for Fortman if the word ''let's'' had been deleted from Hartman's statements. (Cal. Const., art. VI, § 13; *People* v. *Watson,* 46 Cal.2d 818, 836 [299 P.2d 243].)

Finally, appellant Hartman urges that we reduce the conviction to manslaughter since the evidence does not remotely suggest malice.

Under the felony-murder doctrine, from which appellants' first degree murder conviction derived, malice is not a necessary requirement. The only criminal intent required is the specific intent to commit the particular felony. Numerous cases have pointed out that a killing which is perpetrated during the course of one of the felonies enumerated in Penal Code, section 189 is murder of the first degree regardless of whether it was intentional or accidental. (*People* v. *Coefield, supra,* at page 868; *People* v. *Morlock,* 46 Cal.2d 141, 146-147 [292 P.2d 897].)

The case at bench poses a paradox. If the case against appellants had been limited to murder, the evidence of the ''specific mental state essential'' to commit such an offense, would have compelled an instruction on the question of diminished capacity in respect of murder. Such an instruction might have impelled the jury to conclude that appellants did not have ''the specific mental state essential'' to commit murder. The evidence in *Conley, supra,* insofar as it fails to show the required legal malice to commit murder, is less compelling than in the case at bench. The evidence at bench is clear, however, that appellants did intend to perpetrate the robbery of which they were convicted and, as pointed out, the

court did give instructions on the subject of diminished mental capacity insofar as it required an intent to commit the crime of robbery. The felony-murder rule, however, compels an affirmative finding of "the specific mental state essential" to commit first degree murder and leaves no room for a difference of opinion on that vital ingredient by either the court or jury.

Since appellants' convictions for attempted robbery satisfy the requirements for a first degree murder conviction, (Pen. Code, § 189), the judgments must be, and they are affirmed.

Herndon, J., and Fleming, J., concurred.

A petition for a rehearing was denied January 12, 1968, and appellants' petition for a hearing by the Supreme Court was denied February 8, 1968.