[Crim. No. 12820. Second Dist., Div. Two. Feb. 18, 1970.]

THE PEOPLE, Plaintiff and Respondent, v.
PHILLIP CHARLES FORTMAN, Defendant and Appellant.

**COUNSEL**

Robert E. Burke, under appointment by the Court of Appeal, for Defendant and Appellant.

Thomas C. Lynch, Attorney General, Elizabeth Miller and James L. Markman, Deputy Attorneys General, for Plaintiff and Respondent.

**OPINION**

**ROTH, P. J.**—The filing of a petition for habeas corpus by appellant Fortman with the Supreme Court of this state was treated by that court as an application to recall the remittitur in *People* v. *Fortman,* 257 Cal.App.2d 45 [64 Cal.Rptr. 669]. On January 22, 1969, it issued an order transferring the case to this court "with directions to recall its remittitur as to appellant Fortman, vacate its judgment as to him, and determine his appeal in light of *Barber* v. *Page,* 390 U.S. 719; *Bruton* v. *United States,*

391 U.S. 123; *Roberts* v. *Russell,* 392 U.S. 293; and the constitutional harmless error rule of *Chapman* v. *California,* 386 U.S. 18."

Remittitur was recalled. Counsel was appointed for petitioner. Briefs on the two points raised by appellant have been filed.

Appellant now urges that (1) the admission of the extrajudicial statement of a codefendant violated the right of confrontation required by *Bruton* and made retroactive by *Roberts* and (2) that use of the testimony of an out of state witness given at the preliminary hearing without a showing of diligence to have the witness present, violated his right of confrontation required in *Barber* and made retroactive by *Berger* v. *California,* 393 U.S. 314, 315 [21 L.Ed.2d 508, 510, 89 S.Ct. 540].[1]

Facts pertinent to the original decision and the general background of the crime in respect of which the conviction of appellant and his codefendant Hartman (Hartman) were affirmed, are set forth in *People* v. *Fortman* (1967) 257 Cal.App.2d 45 [64 Cal.Rptr. 669]; (hearing denied February 8, 1968).

In *Fortman, supra,* in treating a claimed *Aranda* error then urged, which is the substance of the *Bruton* error now relied upon, we said at page 54: "Appellant Fortman contends that the trial court erred in admitting the statements of appellant Hartman in the joint trial of both appellants. He argues that the deletions made by the trial judge from the statements Hartman gave to the police did not meet the standards set forth in *People* v. *Aranda,* 63 Cal.2d 518 [citations]."

The extrajudicial statements made after Hartman had been fully advised of his constitutional rights, are contained in the following conversation between Hartman and Sergeant Stovall:

"Q. Tim, you previously stated the first you recall was walking down the street and making a statement something about, 'Let's roll this guy.' Can you recall exactly what you said? A. No, sir, I don't know whether I said it or not. I wasn't sure whether I said it or not. Q. What do you think you said? A. I could have said, I could have said, *'Let's* roll him.' I could have said, *'Let's* see if he has any money.' I just don't remember what I said" (italics added). Fortman contends that the word "Let's" implicates him in the crime and constitutes reversible error.

After reciting the above, we said:

"In *Aranda,* the court held that where the prosecution proposed to intro-

---

[1]*Bruton* v. *United States* was decided May 20, 1968; *Roberts* v. *Russell,* making *Bruton* retroactive, was decided June 10, 1968; *Barber* v. *Page* was decided April 23, 1968; *Berger* v. *California,* making *Barber* retroactive, was decided January 13, 1969.

duce into evidence an extrajudicial statement of one defendant that implicates a codefendant, the trial court 'can permit a joint trial if all parts of the extrajudicial statements implicating any codefendants can be and are effectively deleted without prejudice to the declarant. By effective deletions, we mean not only direct and indirect identifications of codefendants but any statements that could be employed against nondeclarant codefendants once their identity is otherwise established. (*People* v. *Aranda, supra,* at p. 530.) Here, direct and circumstantial evidence was received which linked Hartman and Fortman together before and during the crime. It is not improbable that the word 'Let's' implicated Fortman. (*People* v. *Aranda, supra,* fn. 10 at pp. 530-531; Compare *People* v. *Massie,* 66 Cal.2d 899, 918-919 [citations].)

"Failure to adhere to the *Aranda* procedures, however, constitutes reversible error only if it causes prejudice. (*People* v. *Charles,* 66 Cal.2d 330, 343-344 [citations]; see *People* v. *Massie, supra,* at pp. 919-924.) ▉ In the present case, Fortman was identified, both directly and circumstantially by numerous witnesses. Statements by the victim implicated him in the crime. Hartman's use of the word 'let's' constituted tenuous identification of his codefendant. We find no reasonable probability in this case that the jury would have returned a more favorable verdict for Fortman if the word 'let's' had been deleted from Hartman's statements. (Cal. Const., art. VI, § 13; *People* v. *Watson,* 46 Cal.2d 818, 836 [citation].)"[2]

Appellant and Hartman were jointly tried. No motion was made by either for a separate trial. A proper instruction was given that the extrajudicial statement was evidence only against Hartman. However, the Supreme Court said in *Roberts,* after repeating the *Bruton* doctrine, that proper instructions are not a cure.

---

[2]Our original opinion was filed December 15, 1967. Hearing was denied February 8, 1968. *Aranda* principles did not then have constitutional stature. Speaking in *In re Whitehorn,* 1 Cal.3d 504, our Supreme Court says at page 510 [82 Cal.Rptr. 609, 462 P.2d 361]: "In *Aranda,* we adopted new rules governing the introduction of extrajudicial statements of a codefendant at a joint trial, taking pains to point out that 'In the absence, however, of a holding by the United States Supreme Court that the due process clause requires such change, the rules we now adopt are to be regarded, not as constitutionally compelled, but as judicially declared rules of practice to implement section 1098.' (63 Cal.2d at p. 530; fn. omitted.) In *Charles,* which was also decided before *Bruton,* we said that the 'purposes of *Aranda* thus do not require its application to convictions long since final' (66 Cal.2d at p. 333) and while we held 'that cases still pending on direct review should be adjudicated in accord with the principles which *Aranda* established' (66 Cal.2d at p. 334), we declined to accord to *Aranda* full retroactive operation without regard to time. While we intimate no intention to qualify our *Aranda* rules, we point out that the principles of *Bruton,* while dealing with the same area, have been cast in a constitutional mold. In applying them, we are under the compulsion of *Roberts* to give them full retroactive effect."

Hartman testified at the trial and appellant had an opportunity to and did cross-examine Hartman. This factor does not prevent the application of *Bruton*.[3] (*In re Whitehorn*, 1 Cal.3d 504, 510, 511 [82 Cal.Rptr. 609, 462 P.2d 361].)

In our former opinion, as appears from the excerpt above, we treated Hartman's extrajudicial statement as error, but we were satisfied that it was nonprejudicial under *Watson*.

We now add that we are convinced beyond a reasonable doubt (*Chapman v. California*, 386 U.S. 18 [17 L.Ed.2d 705, 87 S.Ct. 824, 24 A.L.R.3d 1065]) that if the implicating portion of Hartman's statements herein quoted were omitted from the record, Fortman was inevitably placed at the scene of the crime and he inevitably participated in the robbery which resulted in the victim's death.

Fortman testified that immediately prior to the assault and the robbery of the victim he and Hartman were in a hotel room where they split one half gallon of wine," . . . we split it down the middle . . . .

". . . [Y]ou drank a half of a half gallon?

". . . . . . . . . . . . . . . . . .

"Q. Did you make a conscious effort to split it evenly? A. Yes, sir. Q. After you finished the wine, what do you recall happening? A. Well, I remember putting my shirt and tie on, and I didn't realize that I drank so much. I just blacked out as far as my memory goes. I don't remember leaving the hotel room. And the first thing that came to my memory *was we was walking, seeing this old man laying on the sidewalk, walking up to him,* looking at him, some people coming out of somewhere come out of an alley or a building or something. It was in the light. *And Mr. Hartman was fighting with this one guy, and somebody grabbed me around the neck,* and I don't remember anything else except—." (Italics added.)

Officers Fabarez and Heath, within approximately 10 minutes of the assault and robbery, arrested appellant and Hartman who were within 25 feet of each other at the time. Appellant was advised of his constitutional rights. Fabarez testified that the left knee of appellant's trouser was torn and that he could see fresh blood on appellant's knee. He asked appel-

---

[3]Although following the principle of *Bruton* that cross-examination of a defendant at the trial who has given an extrajudicial statement, does not satisfy the confrontation right, our Supreme Court says in *In re Whitehorn*, at page 511: " 'However, the testimony so given by the confessing party has a significantly mitigating effect as to any prejudice which might be claimed to result from the admission of the extrajudicial confession.' "

lant how the pants had become torn and appellant stated that it had happened a few nights before.

During the booking process appellant stated his pants had been ripped that evening "A big black nigger did that to me tonight in a fight."

Officer Heath testified that at the time of the arrest appellant and Hartman were each wearing one black glove.

Appellant testified he did not recall putting on gloves that evening, nor did he recall seeing Hartman wear a glove. He said that the gloves were his, although in fact they were not his.

Appellant further testified that he did not tell the truth during his questioning by any of the officers because he did not want to get into trouble over fights. He did not recall telling the officers that the rip in his pants took place during a fight with a Negro and denied having a fight with any Negro person several days prior to the murder.

A search of appellant revealed a one dollar bill in appellant's wallet and no other currency. At the time of the arrest appellant was wearing a dark gray overcoat and a suit. He did not sway or stagger, his speech was not slurred, and he did not appear to be intoxicated at the time of the arrest, although both appellant and Hartman had an odor of alcohol about them.

The victim stated in a hospital, within an hour after the assault, to Officer Denham: "I'm going to die." He said that "two guys" had robbed him taking two dollars out of his pants pocket, described the men as Caucasian and said that each was wearing one black glove.[4]

The language of the United States Supreme Court in *Harrington* v. *California* (June 2, 1969) 395 U.S. 250 [23 L.Ed.2d 284 at p. 288, 89 S.Ct. 1726] is apposite: "We do not depart from Chapman; . . . Our decision is based on the evidence in this record. The case against [Fortman] was not woven from circumstantial evidence. It is so overwhelming that unless we say that no violation of Bruton can constitute harmless error, we must leave this state conviction undisturbed." (Cf. *In re Whitehorn,* 1 Cal.3d 504, 512-517 [82 Cal.Rptr. 609, 462 P.2d 361].)

---

[4]*People* v. *Brawley,* 1 Cal.3d 277, 290 [82 Cal.Rptr. 161, 461 P.2d 361] holds that dying declarations are admissible. "It has similarly been recognized that certain other exceptions to the hearsay rule do not violate the Sixth Amendment right of confrontation. (*Tomlin* v. *Beto,* 377 F.2d 276, 277 [official records]; *McDaniel* v. *United States,* 343 F.2d 785, 789 [cert. den. 382 U.S. 826 [15 L.Ed.2d 71, 86 S.Ct. 59]] [official records]; *Mattox* v. *United States,* 156 U.S. 237, 240-244 [39 L.Ed. 409, 410-411, 15 S.Ct. 337] [testimony of deceased witness who has testified at former trial]; see *Pointer* v. *Texas, supra,* 380 U.S. 400, 407 [13 L.Ed.2d 923, 928] [dying declarations and testimony of deceased witness who has testified at a former trial]; 5 Wigmore, Evidence (3d ed. 1940) pp. 127-135; McCormick on Evidence (1954) pp. 486-487.)"

■ Appellant's second contention is predicated upon the ruling of the trial court, over objection by appellant, which permitted the prosecution to read the testimony given at the preliminary hearing of Roy L. Chandler, a sailor, who was an eyewitness. The fact that Fortman was represented at the preliminary hearing is immaterial.[5] It was established that respondent knew that Chandler was either in Illinois or Tennessee sometime prior to the date of the trial. The Uniform Act To Secure The Attendance of Witnesses from without the State in Criminal Cases had been subscribed to by Illinois and Tennessee and was binding upon respondent during May, June and July 1966, the time of the trial. (Pen. Code, §§ 1334-1334.6.)

The prosecution, relying on the then existing rule in this state (*People v. Casarez,* 263 Cal.App.2d 130 [69 Cal.Rptr. 187]) proved Chandler's presence in another state to justify the admission of his testimony set forth in the preliminary transcript. Neither *Barber* (April 23, 1968) nor *Berger v. California,* 393 U.S. 314, 315 [21 L.Ed.2d 508, 510, 89 S.Ct. 540] (January 13, 1969) which made *Barber* retroactive, had been decided.

■ It is clear from the record no proper showing of good faith and diligence to produce Chandler as a witness was made. Appellant was thus deprived of his right to confrontation. (*Berger; Barber; Casarez.*)

■ Respondent concedes error but asserts that the error is harmless beyond a reasonable doubt. Judged by the standard prescribed in *Chapman,* we agree. (*People* v. *Flores,* 68 Cal.2d 563, 568 [68 Cal.Rptr. 161, 440 P.2d 233]; *People* v. *Ross,* 67 Cal.2d 64, 74 [60 Cal.Rptr. 254, 429 P.2d 606].)

Chandler's testimony was uncertain insofar as it connected appellant with the crime. It was directed primarily against Hartman. If Chandler's testimony were completely eliminated from the record, there would not be, in our minds, a possibility beyond a reasonable doubt that a different verdict as to appellant would have been rendered.

---

[5]"Moreover, we would reach the same result on the facts of this case, had petitioner's counsel actually cross-examined Woods at the preliminary hearing. See *Motes* v. *United States,* 178 U.S. 458, 44 L.Ed. 1150, 20 S.Ct. 993 (1900). The right to confrontation is basically a trial right. It includes both the opportunity to cross-examine and the occasion for the jury to weigh the demeanor of the witness. A preliminary hearing is ordinarily a much less searching exploration into the merits of a case than a trial, simply because its function is the more limited one of determining whether probable cause exists to hold the accused for trial. *While there may be some justification for holding that the opportunity for cross-examination of testimony at a preliminary hearing satisfies the demands of the confrontation clause where the witness is shown to be actually unavailable, this is not, as we have pointed out, such a case.*" (Italics added.) (*Barber* v. *Page,* 390 U.S. 719 [20 L.Ed.2d 255, 88 S.Ct. 1318]; see *In re Whitehorn,* p. 511.)

Chandler was across the street at the time of the crime. He saw the victim on the ground. He noted that the victim's clothing appeared to be "ransacked," his nose was bleeding, his left eye was swollen severely, and the victim's pocket was pulled out and napkins were hanging out of one pocket. He saw two men standing by the victim. They were well dressed, one was wearing a suit. Hartman, one of the two men, was kneeling over the victim. Chandler thought the victim was drunk and Hartman was trying to help him. He was not aware of the presence of the other man until Hartman began to walk away "[a]nd the other one, I didn't notice what he was doing, but he was there.

". . . . . . . . . . . . . . . . . .

". . . Well, I noticed that when this guy walked off, that there was someone next to him; but to describe the person, identify him or his clothing or anything, I couldn't do it. But I was aware that there was someone with him."

Appellant argues, using the excerpted Chandler testimony as a base that "No other witness placed either of the defendants in such close proximity to Mr. Cirk [the victim] under circumstances suggesting criminal conduct on their part . . . ."

The record, however, demonstrates otherwise: Wholly aside from the dying declaration of the victim,[6] which included the description of his two assailants as Caucasian, each wearing one black glove, or the testimony of the police officers, there were at least six eyewitnesses: Dennis Donovan, Gerald Houser, Rol Christofferson, Patricia Schnorr, Carl Nordgren, William Roy. All testified to events in whole or in part more fully than did Chandler. Christofferson and his friend were at the scene for 30 minutes, described the men and the clothing they wore and Christofferson specifically mentioned each man wore a black glove.

Actually Chandler did not identify appellant at all and his testimony insofar as appellant is concerned is remote and illusive. However, the testimony of the other eyewitnesses named above, shows without the possibility of a reasonable doubt, wholly aside from the inherent probabilities generated by appellant's testimony, and even without the help of other evidence, that the assault and robbery were committed by appellant and Hartman.

Chandler fixed the time of the robbery and the assault which resulted in death as ". . . 9:00 . . . because we were hurrying before this clothing store got closed." All witnesses fixed the time at approximately that hour.

---

[6]Clearly admissible. (*Brawley*, see fn. 4.)

Chandler added nothing to what was established beyond a reasonable doubt by abundant other evidence.

"On the compelling record which we have summarized above, we can conceive of no reasonable possibility that this jury could have reached any verdict other than one of guilt even if . . ." (*Ross,* p. 74) Chandler had appeared in person and had been examined and cross-examined, and "we conclude that the People have proved 'beyond a reasonable doubt that the error complained of did not contribute to the verdict obtained.' (*Chapman* v. *California* (1967) 386 U.S. 18, 24 . . .)." (*Flores,* p. 568; *Harrington,* p. 288; *Whitehorn,* p. 512 et seq.; *Ross,* p. 74.)

Appellant's conviction of a felony is due to an abundance of evidence convincing beyond a reasonable doubt that appellant and Hartman robbed or attempted to rob a feeble old man and that, in the perpetration of such felony, they engaged in the brutal assault, as a consequence of which the old man died. The felony murder doctrine compels the result.

The judgment is affirmed.

Herndon, J., and Fleming, J., concurred.

A petition for a rehearing was denied March 19, 1970, and appellant's petition for a hearing by the Supreme Court was denied April 15, 1970. Peters, J., was of the opinion that the petition should be granted.