[Crim. No. 5615. Third Dist. Dec. 17, 1970.]

THE PEOPLE, Plaintiff and Respondent, v.
GEORGE CLAYTON WALLACE, Defendant and Appellant.

610

## Counsel

Thomas H. Frankel, under appointment by the Court of Appeal, for Defendant and Appellant.

Thomas C. Lynch, Attorney General, Roger E. Venturi and Loren E. McMaster, Deputy Attorneys General, for Plaintiff and Respondent.

## OPINION

BRAY, J.*—Defendant appeals from judgment, after jury verdict, of conviction of violation of section 211, Penal Code (first degree robbery).[1]

### QUESTIONS PRESENTED

1. Assistance of counsel was effective.

2. No error in instruction and argument on conspiracy.

3. No abuse of discretion in allowing joint trial of defendant and a codefendant.

4. Habitual criminal adjudication proper.

5. Wallace knew implications of his admission of priors.

6. Publicity did not prevent fair trial.

### RECORD

Defendants, George C. Wallace, William Conrad Kucel and Duane Fergus Heaney, were charged with violation of section 211 of the Penal Code (robbery while armed with a deadly weapon). Heaney was also charged with a violation of section 245, subdivision (b) of the Penal Code (assault with a deadly weapon upon a peace officer). Wallace admitted four prior felony convictions. Due to illness of his counsel, Heaney's trial was ordered separated from that of Wallace and Kucel. Kucel and Wallace each made motions for separate trials, which motions were denied. The jury found both Kucel and Wallace guilty of first degree robbery. Kucel did not appeal. Wallace was declared an habitual criminal. Wallace appeals.

### EVIDENCE

At approximately 1:30 a.m., May 15, 1969, Heaney was the lone patron of the Riggers Club in Redding. He was standing by the pool table pretending to play pool, although he had no cue in his hand. A masked man entered carrying a gun. The bartender later identified Kucel as this person. Kucel pointed the gun at the bartender and forced him to go into the rest-

---

*Retired Presiding Justice of the Court of Appeal sitting under assignment by the Chairman of the Judicial Council.

[1]The jury also found that defendant was armed with a deadly weapon.

room and Kucel returned to the barroom. Some pool balls and $418.25 were taken. The bartender's testimony showed that Heaney must have assisted Kucel in collecting the money from two cash registers and a money box.

At approximately 1:42 a.m. of the same day, Officer McKinnie of the Redding Police Department saw Wallace driving a white Chrysler of a year 1960 or 1963 or between in the vicinity of the Riggers Club. There were two other male occupants of the car. A few minutes later, Officer McKinnie heard a report of the robbery. At 1:47 a.m., Officers Trapier and Hooper of the California Highway Patrol received a radio call from the Redding Police Department telling of the robbery. The call indicated that there would be three men traveling in a white 1962 Chrysler. Immediately, a white Chrysler which appeared to be a 1960 model with only two persons visible in it appeared. The officers followed the vehicle to Anderson and stopped it there. Wallace was the driver of the car. Kucel was lying across the front seat. Heaney was sitting in the rear seat. One officer asked Wallace to come back to the patrol car with him as he wanted to call to see if any further description was available. Heaney suddenly threw open the door of the Chrysler, came out in a low crouched position, pointing a gun at the officer. Wallace left the scene. Both Kucel and Heaney ordered the officer to drop his gun. Kucel went back to the car and stuffed money in his pockets. Heaney fired two shots into a tire of the patrol car. The men then took off on foot. Several pool balls, some loose money and Heaney's gun were found in the Chrysler or in the immediate vicinity. A black ski mask was found in the car.

The next day when Heaney was arrested, two loaded guns were found on his person plus some bills folded in his shirt pocket and a roll of quarters and some loose change in a pants pocket causing that pocket to bulge. A total of approximately $138 was found on Heaney. Kucel when arrested had over $100 on his person.

About 6:30 a.m. Wallace was arrested. He had neither weapons nor money. After being advised of his constitutional rights and given the *Miranda* warning, Wallace stated that he had been in the field all night. His clothing was soaking wet, soiled and muddy. It had not rained recently but the area was cross-sectioned with various irrigation ditches. Wallace's fingerprints were found in the car.

Mrs. Kucel testified that Kucel and Wallace came to her residence on the day before the robbery to pick up a pistol. Kucel told her he had sold it and was going to deliver it to the buyer. Kucel, Heaney and Wallace were together earlier in the week. Wallace was driving the white Chrysler.

Defendant did not testify. Kucel did, claiming that he had done considerable drinking the night before the robbery. He, Heaney and Wallace went to a girl's home where they consumed more alcohol. The men left for Redding. He fell asleep in the front seat. They stopped several times at bars but he stayed in the car and the next thing he remembered was being stopped by the police. He denied obtaining money from the car. The men left the car and climbed over several fences in the area.

## 1. Assistance of Counsel.

 Wallace contends that the appointment of Terence Pierson as his counsel the morning of the trial denied him the effective aid of counsel. Previously, Wallace had retained attorney Birdlebough, who also represented Kucel, as his counsel. The morning of the trial, attorney Birdlebough moved the court to let him withdraw as Wallace's attorney. Wallace consented to the granting of the motion. The attorney stated that arrangements had been made with Deputy Public Defender Pierson to handle Wallace's defense, and that he and Pierson had been working together on the matter for the past week. Pierson and Wallace had conferred together that day. Pierson was appointed by the court to represent Wallace. He told the court that he was ready to proceed with the trial. He did not move for a continuance, apparently feeling that one was not necessary.

 Wallace's contention that he did not receive effective assistance of counsel is based upon the fact that Pierson waited until after the impanelment of the jury before moving for a severance. As soon as Pierson was appointed to represent Wallace and before examination of the jurors, Birdlebough moved for separate trials of Kucel and Wallace. Pierson, although he did not then make a formal motion for a severance, joined in the argument for a severance. As stated, he later moved for severance. In denying the motion, the court stated that defendant's predicament did not arise "from the fact of a joint trial . . . [but rather] from the existence of a criminal record. . . ."

 It seems to be a late fashion in appellate work where the counsel on appeal differs from the one at trial to contend, no matter how flimsy the ground, that the defendant was denied effective counsel at the trial. The burden of establishing such contention is on the defendant. (*People* v. *Reeves* (1966) 64 Cal.2d 766, 774 [51 Cal.Rptr. 691, 415 P.2d 35], cert. den. 385 U.S. 952 [17 L.Ed.2d 229, 87 S.Ct. 332].) Defendant points to no action or failure of trial counsel to act, indicating an ineffectiveness of trial counsel, other than the claimed effect of his not moving for severance earlier than he did. The time of a busy appellate court should not be taken up with an insubstantial claim as is the one in the instant case.

Although Wallace complains of the last minute appointment of Pierson as his counsel, he points to no other claimed failure of Pierson to properly defend him other than a delay in moving to withdraw Wallace's admissions of his prior convictions, which motion the court denied. Nor does he point to any indication of lack of preparation for his defense. An examination of the record indicates that Pierson's representation of Wallace was adequate and that Wallace's trial was far from being reduced to a sham or farce. (See *People* v. *Reeves, supra,* 64 Cal.2d 766, 774, cert. den. 385 U.S. 952; *People* v. *Ibarra* (1963) 60 Cal.2d 460, 464 [34 Cal.Rptr. 863, 386 P.2d 487].)

### 2. Conspiracy.

Defendants were not charged with conspiracy. Where substantial evidence discloses a conspiracy, it is the duty of the trial court, when requested, to give a proper instruction on the law of conspiracy, even though no conspiracy is charged in the indictment or information. (*People* v. *Washington* (1969) 71 Cal.2d 1170, 1175-1176 [81 Cal.Rptr. 5, 459 P.2d 259]; *People* v. *Teale* (1965) 63 Cal.2d 178, 188 [45 Cal.Rptr. 729, 404 P.2d 209].) Likewise, where there is such evidence, the prosecutor is entitled to comment on it in closing argument. (*People* v. *Beivelman* (1968) 70 Cal.2d 60, 76-77 [73 Cal.Rptr. 521, 447 P.2d 913].)

There was substantial evidence of conspiracy justifying the instruction of the court and the argument of the prosecutor on the subject. Kucel and Wallace picked up Kucel's gun the afternoon before the robbery; the robbery was well organized, from Heaney's preceding Kucel into the club and pretending to play pool until the last patron was gone to the use of the ski mask, the weapons, the tape to tie the victim and the use of the getaway car.

### 3. Joint trial and extrajudicial statements.

Wallace contends that the trial court abused its discretion in allowing joint trial of himself and Kucel since extrajudicial statements of Kucel were admitted in evidence. As will hereinafter appear, the extrajudicial statements did not involve Wallace.

After selection of the jury, Wallace's counsel moved for severance which motion was denied. Section 1098 of the Penal Code provides for joint trials unless the court orders otherwise. A separate trial is, therefore, not a matter of right but rather a privilege. (*People* v. *Baa* (1944) 24 Cal.2d 374, 377 [150 P.2d 1].) The determination whether a motion for severance should be granted rests within the sound discretion of the trial judge. His ruling will not be disturbed on appeal unless there is an

abuse of discretion (*People* v. *Alvarado* (1965) 231 Cal.App.2d 789, 792 [42 Cal.Rptr. 310]), although any abuse of discretion in the denial of a motion for severance must be determined upon the showing at the time the motion is made. (*People* v. *Brawley* (1969) 1 Cal.3d 277, 292 [82 Cal.Rptr. 161, 461 P.2d 361].) ■ In the present case, in denying Wallace's motion for severance, the trial court noted that no prejudice would arise from the fact of a joint trial, and, as appeared in the trial itself, the court was right.

The extrajudicial statements made by Kucel of which Wallace complains follow:

Officer Hooper testified that after Heaney had disarmed the officers at the scene of the stop, Kucel asked Heaney, "What are you doing?" A few minutes later, Heaney shot the tires of the patrol car and told Kucel, "Come on, let's go." The record does not show that Wallace was then present. Officer McCarty testified that when he arrested Kucel, the latter said that he had been sleeping in the field. Kucel testified that at the scene of the stop, Heaney asked him, "Have you got your piece?" Kucel replied "No." Heaney said, "Well get it," and then stated, "Come on. Let's get out of here. Let's go." Defendant made no objections to these statements at the trial. The objections are deemed waived. (*People* v. *Gonzales* (1970) 4 Cal.App.3d 593, 608 [84 Cal.Rptr. 863].)

As to Heaney's statements: After the officers stopped the car, Heaney said, "Kick it off," ordering Officer Trapier to remove his gun from the top of the patrol car; "Well, give me 5 minutes," asking that he be allowed time to get away; "Come on, come on," urging Kucel to escape with him; "Drop it, drop it," ordering the officers to drop their guns; "Drop it or I will shoot your partner," ordering Officer Trapier to drop his gun; "Have you got your piece? Well, get it," asking Kucel to get his gun from the car; and "Come on. Let's get out of here. Let's go," telling Kucel to leave with him. Defendant did not object to the admission of this testimony. He cannot object now on appeal. (*People* v. *Foster* (1969) 271 Cal.App.2d 763, 765-766 [76 Cal.Rptr. 775].)

Even if the proper objections had been made, it will be noted that none of the statements implicated Wallace. Hence, the protections as to severance of trial laid out in *People* v. *Aranda* (1965) 63 Cal.2d 518 [47 Cal.Rptr. 353, 407 P.2d 265], do not apply.

There are two other theories upon which the above statements are admissible; namely, declarations of a conspirator and none were within the hearsay rule.

■ The admissibility of the declaration of a conspirator is not affected

by the fact that the information did not charge a conspiracy. (*People* v. *Morales* (1968) 263 Cal.App.2d 368, 374 [69 Cal.Rptr. 402]; *In re Domingo* (1969) 268 Cal.App.2d 642, 650 [74 Cal.Rptr. 161].)

■ All of the statements introduced into evidence were made in furtherance of the conspiracy whose objective was to rob the Riggers Club, escape and divide up the spoils. In order to escape and divide all three robbers would have to get away from the officers who stopped them. The statements were all made in furtherance of the specific objective of escaping from the officers and avoiding apprehension.

The statements were admissible as not being within the hearsay rule. Section 1200 of the Evidence Code defines hearsay evidence as "evidence of a statement that was made other than by a witness while testifying at the hearing and *that is offered to prove the truth of the matter stated.*" (Italics added.) None of the statements were offered to prove the truth of the matter asserted. Rather, they were offered to show merely that the words were uttered. Thus, Officer McCarty's testimony that Kucel stated that he was sleeping in the field was not offered to prove that he was in fact sleeping in the field, but for the probative value it might have from the fact that these words were spoken. The same reasoning applies to the other extrajudicial statements.

■ The latest authority on the subject of extrajudicial statements of a codefendant who testifies at the trial is *State of California* v. *John Anthony Green* (1970) 399 U.S. 149, 158 [26 L.Ed.2d 489, 497, 90 S.Ct. 1930], which held that "the Confrontation Clause [of the Sixth Amendment U.S. Const.] is not violated by admitting a declarant's out-of-court statements, as long as the declarant is testifying as a witness and subject to full and effective cross-examination."

■ Wallace's right under the Sixth Amendment to confront the witness Heaney, who did not testify, was not violated by the admission of his statements. (*Bruton* v. *United States* (1968) 391 U.S. 123 [20 L.Ed.2d 476, 88 S.Ct. 1620], *Douglas* v. *Alabama* (1965) 380 U.S. 415 [13 L.Ed.2d 934, 85 S.Ct. 1074] and *Pointer* v. *Texas* (1965) 380 U.S. 400 [13 L.Ed.2d 923, 85 S.Ct. 1065], relied upon by Wallace hold only that an accused's right to confrontation is violated when a confession of a non-testifying codefendant implicating the accused is admitted in evidence. Likewise, *Cook* v. *Sigler,* 299 F.Supp. 1338, is not in point as it deals with statements of a codefendant incriminating the defendant. Here, as already mentioned, there was no confession nor implication of Wallace by the statements of the codefendants.

Defendant did not object to the admission of this testimony. He cannot

object now on appeal. (*People* v. *Foster, supra,* 271 Cal.App.2d 763, 765-766.)

If Wallace was present when Heaney said "Let's go," the statement would be admissible thereafter as an admission against interest because of Wallace's disappearance into the field immediately. Moreover, applicable here is the following from *People* v. *Fortman,* 4 Cal.App.3d 495 [84 Cal. Rptr. 458], concerning a codefendant's statement to the defendant's use of the word "Let's." The "use of the word 'Let's' constituted tenuous identification of his codefendant. We find no reasonable probability in this case that the jury would have returned a more favorable verdict for Fortman if the word 'Let's' had been deleted from Hartman's statements." (P. 498.)

### 4. Habitual criminal.

At the time of sentence the court made no pronouncement that Wallace was adjudged an habitual criminal. The abstract of judgment states that he was adjudged such.

A formal adjudication that a defendant was found to be an habitual criminal is not prerequisite to the validity of his commitment as such. (*In re Lamey* (1948) 85 Cal.App.2d 284 [193 P.2d 66].) "[T]he omission of such formal adjudication in a final judgment would not vitiate said judgment nor in any way impair its effectiveness so long as the judgment contained an adjudication that the defendant had been found guilty of the several crimes which, when committed by a single person, rendered him an habitual criminal." (*People* v. *Vaile* (1935) 2 Cal.2d 441, 445 [42 P.2d 321].) An adjudication that Wallace had been guilty of three prior felonies appears in the judgment.

"[W]hen the evidence as disclosed by the record shows that the defendant is guilty of prior conviction as provided by section 644 of the Penal Code . . . he becomes an habitual criminal and the prison board is then authorized to fix the term of imprisonment accordingly." (*In re Valenzuela* (1945) 71 Cal.App.2d 198, 201 [162 P.2d 301].)

### 5. Wallace was aware of the effect of his admission of the priors.

His statement that he was not informed of the consequences of his admission of the priors is belied by the record. Before Wallace admitted them, the prosecutor said that the priors involved a violation of the habitual criminal law and that they were a "serious matter" and that the prosecutor wanted to make it clear that defendant was not only pleading to three priors but that he had served a separate commitment to the state prison on the first prior and a separate commitment on the second and third priors.

The amended information gave defendant notice that he was charged with prior convictions that could lead to habitual criminal proceedings. Due process was satisfied. (See *In re Ponce* (1966) 65 Cal.2d 341, 343 [54 Cal.Rptr. 752, 420 P.2d 224].)

### 6. Publicity.

■ Wallace contends that certain publicity deprived him of a fair trial. On May 15, the day of the robbery, a Redding newspaper ran an article "Bar holdup, suspects pursued and captured." It gave details of the robbery, the stopping of defendants by officers, the disarming of the officers and the escape of the three and then later apprehension. It contained two pictures, one showing Kuçel in handcuffs with an officer and a statement that $136 had been found on "suspect," and the other of Officer Coulter holding a gun with the erroneous caption that the gun had been found on Wallace. No other citation of adverse publicity is made by Wallace. The article was not brought to the attention of the trial judge nor was any motion for change of venue made.

The trial took place some three and one-half months after the publication in question. There was no difficulty in selecting jurors who were either unaware of the article or did not recall the details of the case from reading the newspaper. No venireman was challenged for cause based on his knowledge of the case from reading the article. None who either recalled reading it or thought that they might have read it remembered any details concerning the case. After exercising four of his five separate peremptory challenges, Wallace indicated that he was satisfied with the jury. He cannot now complain that any objectionable jurors remained where he still had an unused separate peremptory challenge. (*People* v. *Hesbon* (1968) 264 Cal.App.2d 846, 854 [70 Cal.Rptr. 885]; see *People* v. *Miller* (1969) 71 Cal.2d 459 [78 Cal.Rptr. 449, 455 P.2d 377].) There is no evidence in the record and counsel has pointed to no facts indicating that Wallace did not receive a fair and impartial trial.

■ The judgment does not contain a special finding that defendant was armed with a deadly weapon at the time of the commission of the offense or at the time of his arrest. However, the abstract of judgment filed with the prison authorities erroneously contains such a finding, stating that sections 969c and 3024 of the Penal Code apply. *People* v. *Floyd, supra,* 71 Cal.2d 879, 883, holds that those sections are inapplicable to first degree robbery.[2] Both for that reason and the fact that the judgment con-

---

[2]Penal Code section 12022.5 (Stats. 1969, ch. 954, p. 1900, § 1, effective Nov. 10, 1969) which would increase the penalty for armed robbery, is not retroactive and thus does not apply here.

tains no such finding the statement in the abstract of judgment must be disregarded.

Judgment is affirmed.

Pierce, P. J., and Regan, J., concurred.

A petition for a rehearing was denied January 7, 1971, and appellant's petition for a hearing by the Supreme Court was denied February 10, 1971.