[Crim. No. 17021. First Dist., Div. Two. July 17, 1979.]

THE PEOPLE, Plaintiff and Respondent, v.
VICTOR GREEN, Defendant and Appellant.

[Crim. No. 17209. First Dist., Div. Two. July 17, 1979.]

THE PEOPLE, Plaintiff and Respondent, v.
TERRELL DEAN, Defendant and Appellant.

COUNSEL

William Flenniken, Jr., and Robert Hale McConnell, under appointment by the Court of Appeal, for Defendants and Appellants.

George Deukmejian, Attorney General, Jack R. Winkler, Chief Assistant Attorney General, Edward P. O'Brien, Assistant Attorney General, Robert R. Granucci and John W. Runde, Deputy Attorneys General, for Plaintiff and Respondent.

OPINION

**TAYLOR, P. J.**—Codefendants appeal from separate judgments[1] of conviction entered on identical jury verdicts finding each guilty of attempted murder in the first degree (Pen. Code, §§ 664 and 187);

[1]As separate notices of appeal were filed, the matter was assigned two separate numbers in this court: Dean, No. 17209, and Green, No. 17021.

kidnaping to commit robbery (Pen. Code, § 209) with bodily harm; and robbery in the first degree (Pen. Code, § 211) with intentional infliction of bodily injury. Each contends that the evidence is insufficient to support the verdict as to the robbery count, and that his motion for a separate trial should have been granted. Dean contends that: 1) the court erred in ordering his appearance at the preliminary hearing without adequately protecting his due process rights; 2) there was insufficient evidence to hold him for a preliminary examination; 3) his Penal Code section 995 motion should have been granted; 4) the court erred by denying his motions to exclude his trial identification by the victim; 5) the court failed to exclude codefendant Green's out-of-court statement; 6) he had a right to prevent the testimony of codefendant Green as the jury was instructed on aiding and abetting; and 7) his sentence for kidnaping and attempted murder was in violation of Penal Code section 654. Green also contends that he is eligible for parole and that the prohibition against parole must be stricken from the judgment. For the reasons set forth below, we have concluded that each judgment must be modified to stay the imposition of sentence for the attempted murder and robbery, and as so modified, affirmed.

The record reveals the following pertinent facts: On the evening of November 3, 1976, shortly after 6 p.m., Mrs. Virginia Emery drove her 1976 Volkswagen bus to the juvenile hall facility in San Leandro to take some medication to her son. She parked her vehicle in the parking lot adjacent to the front entrance of the building, locked it, and returned about 15 minutes later with her keys in hand.

As Mrs. Emery walked around the rear of the bus, and just before she reached the driver's door, she was grabbed from behind by her hair. In the darkness, she was not able immediately to see who had grabbed her. A knife was stuck in the side of her throat, and she was addressed as a "honkie bitch" and instructed to open the driver's door. After she had unlocked and opened the driver's door, the inside light of the vehicle went on, and she was able to take a close look at her assailant.[2] He got in first, pulled her into the driver's seat by the hair, and sat in the passenger seat. He continued to hold onto her hair. Then, a second man[3] climbed in through the driver's door, over Mrs. Emery, and crouched in the aisle behind the two front bucket seats.

---

[2] At the trial, Mrs. Emery positively identified the man with the knife as defendant Green.

[3] Although Mrs. Emery was unable to positively identify the second assailant at the trial, other evidence indicated that he was codefendant Dean.

Green ordered Mrs. Emery to start the vehicle and to drive them to 98th Avenue in Oakland. She was nervous, and stalled the vehicle, but then backed up and drove down the driveway of the juvenile hall facility. Meanwhile, Dean asked Green to give him Mrs. Emery's purse which she had placed beside her on the front floorboard. Green told Dean to wait for a while before taking the purse and advised Mrs. Emery to not "do anything stupid." Dean several times repeated that he wanted the purse; Green repeatedly instructed him to "cool it."

When Mrs. Emery arrived at the stop sign at the end of the driveway, she saw a third man and believed that he might be associated with her assailants. When the vehicle came to a stop, she heard the sliding door of the van open, but was not able to turn around, as Green still held her by her hair.

Green ordered Mrs. Emery to drive down Fairmont Boulevard, turn right, enter the MacArthur Freeway and head west toward Oakland. She drove in the right-hand lane on the freeway at approximately 50 miles per hour. Dean continued to ask for her purse and Green repeatedly indicated "later." After they had driven on the freeway for some distance, Dean said: "Let's get rid of her"; Green did not reply. Mrs. Emery was terrified and told them that they could have the van and her purse as long as they did not kill her.

While she was driving, Mrs. Emery was aware that the lock and latch on the driver's door were moving as Dean manipulated them from behind her. As soon as they were open, Dean moved to the driver's seat, and pushed her out the door while Green let go of her hair and pushed her with his foot. She managed to grasp the door handle and steering wheel, but let go of the latter when the two men began smashing her fingers. Then her legs hit the ground and flipped her over and eventually she was bounced free of the vehicle and by her momentum rolled along the freeway in the slow lane. She escaped being hit by oncoming vehicles and came to a stop in the right-hand shoulder. Her purse, which contained $500 in cash, was left in the vehicle.

At that time, Edmond Mikula was also driving in the slow westbound lane of the MacArthur Freeway. He saw a human body being ejected from the left side of the vehicle and managed to drive around it and avoid hitting it. He followed the Volkswagen bus and first saw one person and then a second jump from the right side of the bus onto the shoulder of the freeway. He watched the bus slow down, veer off the road, stop and

tip over about 250 feet from Mrs. Emery. Mikula pulled up behind it and, after ascertaining that no one was inside, stopped another motorist to summon the police and an ambulance, and walked back to Mrs. Emery. The distance between the juvenile facility parking lot and the location where the Volkswagen bus was overturned was 1.7 miles.

Officer Glen Ward of the California Highway Patrol responded to the call and immediately recognized Mrs. Emery as he customarily took his uniforms to her cleaning establishment. He spoke to her briefly and then retrieved her purse from the bus. At this time, Ward did not know that any crimes had been committed. When he returned, he discovered that Mrs. Emery was being attended by a physician.[4] Ward remained at the scene for an hour and a half until a tow truck arrived to take the Volkswagen bus to the Alameda County Sheriff's substation. Ward then drove directly to Fairmont Hospital and turned over custody of Mrs. Emery's purse.

Schorr, the criminalist who was summoned immediately, and his colleague, Stam, spent five hours lifting 34 latent fingerprints from the vehicle. The following day, Barnum, a fingerprint comparison expert, positively identified as Green's one of the latent fingerprints that had been obtained from the front passenger window of Mrs. Emery's Volkswagen bus.

On the evening of November 3, 1976, Probation Officer Lawler was working in the kitchen of the juvenile hall complex on Fairmont Drive in San Leandro. Between 5:15 p.m. and 5:30 p.m., Lawler observed two black males on the patio near the kitchen doors, a place "off limits" to the public. When one of the two men stuck his head through the door, Lawler told him to leave and return to the administration building. From prior contacts, Lawler recognized this person as Green, but did not recognize the second man. Green and the other man left the area and walked in the direction of the administration building, located about a 10-minute walk from the kitchen.

Between 5:15 p.m. and 5:30 p.m. on the evening of November 3, 1976, Deputy Probation Officer Dunn was on duty on the first floor of one of

---

[4]Mrs. Emery, who was 47 years old at the time of the accident, sustained multiple fractures of her pelvis and legs and other parts of her body. She required surgery to put pins into her legs, developed serious complications, and was in extreme pain due to the multiple fractures. She also required extensive therapy in order to be able to walk again. She was still using crutches four months after the incident.

the dormitories of the juvenile hall facility in San Leandro. He looked out the window and saw two young men, subsequently identified as Green and Dean, walk in the direction of the dining hall; several minutes later the pair returned and entered the dormitory. After one of the men identified himself as "Antone Williams" and engaged Dunn in conversation for a few minutes, both left the dormitory and proceeded in a northwest direction towards the exit.

Several days after the incident, sheriff's officers interviewed Dunn and showed him various photographs. At that time, Dunn positively identified Green as the man who had identified himself on November 3 as "Antone Williams." At trial, Dunn indicated that he was "absolutely certain" that Dean was the person who had been with Green that evening.

On November 13, 1976, Officer Scott and three other officers went to 1105 66th Avenue in Oakland to serve an arrest warrant on Green. Green was hiding in the apartment's attic crawl space and was taken into custody immediately. On the morning of November 23, 1976, Detective Tellardin of the Alameda County Sheriff's Department and three other officers went to apartment H at 1537 8th Avenue in Oakland to serve an arrest warrant on Dean. When Tellardin knocked, a woman answered and opened the door. Tellardin identified himself and told her that he was looking for Dean. The woman left and several minutes later, a black male appeared at the door. After a brief conversation, the officers were allowed to enter the back bedroom from which they had heard some unusual noises. Dean was hidden inside the closet and after being ordered out said: "OK, man, you got me."

Dean was then taken to the sheriff's substation, advised of his *Miranda* rights, and made a statement admitting his participation in the crimes. He admitted that he got into the Volkswagen van with the intent of stealing Mrs. Emery's purse. His statement was edited to excise all references to Green, and as so edited, was read to the jury.

We turn first to defendants' contention concerning the sufficiency of the evidence to sustain the judgment and verdict as to robbery. Each maintains that the evidence was insufficient to show that he had the requisite dominion and control of Mrs. Emery's vehicle and purse to constitute a taking within the meaning of Penal Code section 211.

 The above summary of the facts indicates that there is ample substantial evidence to support the first degree robbery conviction of both

Green and Dean. The uncontroverted evidence established that Mrs. Emery was compelled, at knife point and while Green held onto her hair, to drive her vehicle a certain distance and was then forcibly thrown out of the vehicle. The vehicle and her purse were left with defendants who had dominion over both. Thus, a sufficient time interval elapsed for a "taking" (*People* v. *Price,* 25 Cal.App.3d 576, 578 [102 Cal.Rptr. 71]; *People* v. *Martinez,* 274 Cal.App.2d 170, 174 [79 Cal.Rptr. 18]). In *Price* and *Martinez, supra,* the courts were presented with a substantially identical factual situation and noted that robbery does not necessarily entail the robber's manual possession of the loot. All that is required is that the robber acquire dominion over it, although the distance is very small and the property is moved by a person under his control, including the victim. Thus, the completed offense of robbery was committed and there is no merit to Green's contention that he could be found guilty only of attempted robbery.[5]

Dean, relying on *People* v. *Masters,* 219 Cal.App.2d 672 [33 Cal.Rptr. 383], and *People* v. *Phillips,* 201 Cal.App.2d 383 [19 Cal.Rptr. 839], also argues that the completed offense of robbery was not committed in this case because the robbers were unable to "escape with the loot" to a "place of temporary safety." *Masters* and *Phillips, supra,* however, pertain to the issue of when liability for the robbery *terminated,* and the term "completed" was used only in that different sense (*People* v. *Price, supra,* 25 Cal.App.3d, p. 580). No authority supports his contention that liability for the "completed" offense of robbery (as opposed to a mere attempt) does not *commence* until the robber has escaped with the loot to a place of temporary safety. Rather, the law is well settled to the contrary. No extended asportation is required for the offense to pass from the attempt stage to the consummated offense (*People* v. *Martinez, supra,* 274 Cal.App.2d, p. 174; *People* v. *Price, supra,* 25 Cal.App.3d pp. 577-578; see also *People* v. *LeBlanc,* 23 Cal.App.3d 902, 905, 909 [100 Cal.Rptr. 493]; and *People* v. *Gibbs,* 12 Cal.App.3d 526, 548 [90 Cal.Rptr. 866], which distinguish *Masters, supra,* 219 Cal.App.2d 672, on this very ground).

■ The contention that the court erred in denying each defendant's motion for severance[6] is equally without merit. Given the state of the

---

[5] The record indicates that an instruction on attempted robbery as a lesser included offense of robbery was given.

[6] The record indicates that no written motions were filed and the proceedings on the apparently oral motions were conducted off the record in chambers. We assume that oral motions were made as 1) the trial court alluded to them on April 18, 1977. Presumably,

record, we are left without any indication as to the grounds for severance argued below.

■ As stated in *People* v. *Clifton,* 270 Cal.App.2d 860, at page 862 [76 Cal.Rptr. 193]: " 'For an appeal to engage the consideration of an appellate court, it must be brought up on a record which, in addition to being otherwise formally sufficient, shows the error calling for correction. Such error is never presumed, but must be affirmatively shown, and the burden is upon the appellant to present a record showing it, any uncertainty in the record in that respect being resolved against him.' This basic rule is a corollary of the equally fundamental principle that all presumptions and intendments are in favor of the regularity of the action of the lower court in the absence of a record to the contrary."

■ We note that defendants were jointly charged. The charges depended upon common evidence, and their defenses, contrary to their contentions, were not in conflict since each merely tried to minimize his role in forcing the victim out of the vehicle. Accordingly, the denial of each motion[7] to sever was proper and did not constitute an abuse of discretion (Pen. Code, § 1098; *People* v. *Romo,* 47 Cal.App.3d 976, 984 [121 Cal.Rptr. 684]; *People* v. *Wallace,* 13 Cal.App.3d 608, 617 [91 Cal.Rptr. 643]; *People* v. *Diaz,* 276 Cal.App.2d 547 [81 Cal.Rptr. 16]).

In view of the absence of particular grounds, we need not discuss in detail each of the alleged evidentiary matters that required severance.

the motions were heard either on the afternoon of April 18, 1977, or the morning of April 19, 1977; 2) just before noon recess on April 20, 1977, the trial court stated "that motion is denied" with reference to the joint motion for severance. The clerk's minutes indicate that the court and counsel conferred in chambers from noon until 4 p.m. on April 18, 1977. On April 20, 1977, the court ruled from the bench that "Defendants' motions to sever trial *is* denied." From the use of the plural we assume that: a) a severance motion was made by each defendant; b) the singular verb was an oversight.

[7]On the basis of a handwritten notation dated "4/19/77" on the edited version of Dean's confession, Green urges that his severance motion was founded upon *Aranda* objections to use of the edited statement in a joint trial. Relying on *People* v. *Hill,* 66 Cal.2d 536, 558 [58 Cal.Rptr. 340, 426 P.2d 908], he attempts to argue that certain ambiguities in the statement could have been interpreted by the jury to implicate him. However, an examination of the edited statement read to the jury by the People at trial reveals that there is not only no mention of Green personally as a coparticipant in the crimes, but also no reference to any other perpetrator. Thus, the argument as to an *Aranda* error as to Green is without merit (see *People* v. *Manson,* 61 Cal.App.3d 102, 151 [132 Cal.Rptr. 265]; *People* v. *Romo, supra,* 47 Cal.App.3d 984; *People* v. *Marcus,* 36 Cal.App.3d 676, 680-681 [111 Cal.Rptr. 772, 58 A.L.R.3d 594]) and the court properly denied Green's motion to sever (*People* v. *Simms,* 10 Cal.App.3d 299, 307 [89 Cal.Rptr. 1]).

There was here no "prejudicial association" of defendants (see e.g., *People* v. *Massie,* 66 Cal.2d 899 [59 Cal.Rptr. 733, 428 P.2d 869]). Given Dean's complete confession, the evidence against both defendants was equally strong; their culpability in all three crimes was mutual and not disproportionate. Furthermore, neither had a criminal background, a reference to which might have prejudiced the other. Contrary to Dean's contentions, there were no *Aranda* problems as to him, and there was not the slightest confusion as to the culpability of each defendant for each of the three offenses.

■ ■■■ We turn next to Dean's contentions that the superior court erred in denying his Penal Code section 995 motion,[8] as: 1) there was insufficient evidence of his identity adduced at the preliminary hearing to hold him to answer; 2) the in-court identification by Mrs. Emery was tainted as it was unduly suggestive; and 3) there was insufficient evidence of his specific intent to steal as to the robbery. The latter contention has already been disposed of above and need not be rediscussed here.

As to the identification procedures at the preliminary hearing, the record indicates that on June 6, 1976, counsel for each defendant indicated that he wanted his client to be absent to avoid identification by Mrs. Emery on the record. Accordingly, each defendant personally waived his right to be present during the preliminary examination. The magistrate ruled preliminarily that both defendants could be absent during Mrs. Emery's initial examination, but reserved deciding whether or not she could be given an opportunity to view and identify defendants, after they had had an opportunity to cross-examine her.

After Mrs. Emery testified and was cross-examined, the magistrate heard additional arguments from defense counsel about their motion to prevent an in-court identification. Both defendants expressly refrained from requesting that an in-court lineup be conducted and the prosecution noted this fact. Ultimately, the magistrate ruled that the People were entitled to have the victim identify the perpetrators in open court in order to meet their evidentiary burden, notwithstanding the fact that the circumstances of the courtroom identification were indeed suggestive.

[8]While the rulings of the magistrate at the preliminary hearing are not directly reviewable on appeal from the judgment of the superior court (Pen. Code, § 996; *People* v. *Harris,* 67 Cal.2d 866, 870 [64 Cal.Rptr. 313, 434 P.2d 609]; *People* v. *Sanchez,* 24 Cal.App.3d 664, 691-692 [101 Cal.Rptr. 193]), they are properly raised on appeal by review of the denial of a Penal Code section 995 motion where, as here, the arguments were presented to the court below and thus properly preserved.

Then both defendants were brought back into the courtroom and Mrs. Emery proceeded to make identifications of both men. When Dean's counsel moved to strike her in-court identification, the magistrate denied the motion and observed that he was aware of no case law that "required me to hold that the presence of the defendants at the preliminary examination is *impermissibly* suggestive" (italics added). Thereafter, the magistrate granted the request of both defense counsel for a continuance of the preliminary hearing.

When the preliminary hearing resumed on January 25, 1977, Dean's counsel renewed his motion to strike Mrs. Emery's in-court identification. Again, his motion was predicated on the unduly suggestive nature of the in-court identification, although, as indicated above, he had affirmatively declined to request a lineup to avert any prejudice flowing from the confrontation. He argued that since the defense had no "burden" to request a lineup, necessarily it was the duty of the prosecutor to do so if he intended to go forward with an identification in open court. The magistrate again denied the motion to strike, indicating that she believed herself powerless to order a lineup on her own motion over the objection of counsel. At the conclusion of the hearing on January 25, 1977, the magistrate rejected the arguments of counsel regarding the sufficiency of the evidence and held both defendants to answer on all the charges.

■ We think that the magistrate did not err in permitting the victim to identify her assailants at the preliminary hearing. The People had a right to adduce evidence pertaining to the identity of the perpetrators of the crimes in the form of the in-court identification testimony of the eyewitness-victim in order to meet their evidentiary burden in the proceeding. Contrary to Dean's argument below, he had no right to *waive* his presence at the preliminary hearing. Penal Code section 977, subdivision (b) provides, so far as pertinent: "In all cases in which a felony is charged, the accused *must* be present . . . during the preliminary hearing. . . ."[9] (Italics added.) In any event, the People were empowered to compel defendant's presence in court for the purpose of adducing evidence of identity sufficient to support a resulting holding order by the magistrate (cf. Pen. Code, §§ 872, 1331-1332).

■ A defendant's appearance at the preliminary hearing is analogous to giving real or physical evidence and therefore beyond the purview of

_____

[9]Penal Code section 978 provides: "When his personal appearance is necessary, if he is in custody, the court may direct and the officer in whose custody he is must bring him before it to be arraigned."

the privilege against self-incrimination and also does not violate any due process rights (cf. *Cramer* v. *Tyars,* 23 Cal.3d 131, 139 [151 Cal.Rptr. 653, 588 P.2d 793]; *People* v. *Sims,* 64 Cal.App.3d 544, 552 [134 Cal.Rptr. 566]; *People* v. *Breckenridge,* 52 Cal.App.3d 913, 936 [125 Cal.Rptr. 425]). ■ If a criminal defendant *anticipates* that an in-court identification may be suggestive, he has a readily available remedy to avert any prejudice expected to result from the courtroom showup procedure: he may demand that a lineup be conducted preliminary to any in-court identification (*Evans* v. *Superior Court,* 11 Cal.3d 617, 625 [114 Cal.Rptr. 121, 522 P.2d 681]; *People* v. *Vallez,* 80 Cal.App.3d 46, 56 [143 Cal.Rptr. 914].) ■ However, where, as here, a defendant knowingly and deliberately *rejects* the preliminary availability of a lineup as a tactic merely to forestall a legitimate identification by a victim in court, objections should be deemed as waived. Here, Dean was well aware prior to the in-court identification made by Mrs. Emery on January 6, 1977, of his right to request a lineup. He specifically refused to exercise this right. Consequently, he should not be heard to complain now that the identification at the hearing made by Mrs. Emery was tainted by the suggestiveness of the circumstances in the courtroom. We hold that both the magistrate and the superior court properly concluded that the identification procedure in question did not violate Dean's due process rights.

As to the sufficiency of the evidence, Dean argues that Mrs. Emery's identification of him at the preliminary hearing was not certain enough to provide the magistrate with probable cause to believe that Dean was one of the perpetrators of the crimes. This claim, likewise, is meritless.

Mrs. Emery's testimony, set forth below,[10] was the only evidence of Dean's identity adduced at the preliminary hearing on January 6 and January 25.[11]

---

[10] "Q. Do you see the man who was with the man who held the knife that night, the one who crouched down and hit you across the face? A. It appears to be this one but I am not positive because of the hair. THE COURT: By this one, which one do you mean? THE WITNESS: This one on the far right on the end. THE COURT: The record may indicate that the Witness has identified the defendant Terrell Dean. . . . . .Q. Now I think in court now on direct examination you have indicated that my client, the person who is seated right in front of me, the defendant Dean, was described by you as the person that stepped over you and got in the van second, is that correct? A. Yes."

[11] We note that Dean's arguments pertaining to the denial of his section 995 motion on sufficiency of the evidence grounds improperly refers to the evidence presented at the *subsequent* (Apr. 18, 1977) *hearing* in superior court, and the court's remarks based on that evidence. At the April 18, 1977, hearing, Mrs. Emery was much less certain of her identification of Dean and the superior court duly noted that fact (cf. *People* v. *Dickinson,* 59 Cal.App.3d 314, 320-321 [130 Cal.Rptr. 561]).

■ The applicable rules relating to the review of holding orders were concisely summarized in *Rideout* v. *Superior Court,* 67 Cal.2d 471, at page 474 [62 Cal.Rptr. 581, 432 P.2d 197], as follows: "Evidence that will justify a prosecution *need not be sufficient to support a conviction.* [Citations.] ' "Probable cause is shown if a man of ordinary caution or prudence would be led to *believe and conscientiously entertain a strong suspicion of the guilt of the accused.*" ' [Citations.] An information will not be set aside or a prosecution thereon prohibited *if there is some rational ground for assuming the possibility that an offense has been committed and the accused is guilty of it.* [Citations.]

"A reviewing court may not substitute its judgment as to the weight of the evidence for that of the magistrate, and, *if there is some evidence to support the information, the court will not inquire into its sufficiency."* (Italics added.)

All legitimate inferences must be drawn in favor of the information (*People* v. *Dickinson, supra,* 59 Cal.App.3d, 320-321). Applying these rules to Mrs. Emery's above quoted testimony, we conclude that there was some rational ground for believing that Dean was one of the perpetrators of the offenses on Mrs. Emery. Accordingly, Dean's section 995 motion was properly denied.

Dean also contends that the trial court erred by denying his pretrial motion to prevent his in-court identification by Mrs. Emery at trial. This contention is without merit.

The record indicates that a hearing on Dean's motion was held on April 18, 1977. At that hearing, Mrs. Emery indicated that she was then not certain of her preliminary hearing identification of Dean as the second assailant. She had only been able to get two brief glimpses of him: the first, before she entered the van; the second as he climbed into the van over her and got behind her. She had no opportunity to turn around and look at him as the first person who sat in the passenger seat was holding her by the hair.

Under these circumstances, the court below properly concluded that since Mrs. Emery now was *unable* then to make an in-court identification of Dean, there was no prospective evidence for the court to exclude or suppress. The record also indicates that while Mrs. Emery positively identified Green at trial as the first man who wielded the knife and held her hair, she was unable, and made no effort, to identify Dean as the second assailant.

Dean next argues that the trial court erred by permitting his edited confession to be received in evidence at the trial. He urges that his statement was not properly admitted pursuant to the *coconspirator* exception to the hearsay rule (Evid. Code, § 1223); and also that the admission of the edited version of the confession was improper pursuant to *People* v. *Aranda,* 63 Cal.2d 518, 530-531 [47 Cal.Rptr. 353, 407 P.2d 265], as it was not possible to effectively delete the material that implicated him.

As to Dean's first argument, the record indicates that Dean's confession was offered by the People against Dean as an admission and not as a statement of a coconspirator. Thus, Dean's analogies and argument predicated on *People* v. *Leach,* 15 Cal.3d 419 [124 Cal.Rptr. 752, 541 P.2d 296], and Evidence Code section 1223 are inappropriate.[12]

As to his *Aranda* contention, Dean does not specify what material in the edited confession should not have been presented.[13] Further, in the context of the instant case, the "effective deletion" rule on which Dean relies does not pertain to him as he is the declarant. The rule inures to the benefit of Green, the codefendant, who had the constitutional right to exclude references to him in Dean's confession.

Dean further complains that he was prejudiced by Green's testimony at trial. He particularly points to Green's cross-examination in which the prosecution at length asked Green about Dean's involvement in the crimes. Dean asserts that this cross-examination violated his rights, and contends that: a) under the circumstances, the trial court should have prevented Green from testifying on his own behalf; b) the court should have given a limiting instruction *sua sponte* on accomplice testimony; c) Green's testimony on his own behalf, which also inculpated Dean, was not adequately corroborated and, therefore, cannot sustain a conviction against Dean; d) Green should not have been allowed to answer

---

[12]The record indicates that Dean's confession was not offered against Green, who, of course, did not raise the issue. It is doubtful whether Dean has standing to raise on appeal a contention that in theory would be available only to his codefendant (cf. *People* v. *Varnum,* 66 Cal.2d 808, 812 [59 Cal.Rptr. 108, 427 P.2d 772]).

[13]Dean admits that his trial counsel below urged that the edited version of the confession was erroneously allowed at trial because it deleted *too much* rather than *too little,* namely, that it excluded exculpatory statements made by Dean along with the references to codefendant Green. Although he does not reiterate this contention on appeal, we note that our review of the edited confession indicates that no exculpatory statements by Dean were deleted from the original in the edited version that was read to the jury.

questions only about Dean's participation in the crimes; and e) most of Green's testimony on cross-examination should have been excluded as being beyond the scope of direct.

Preliminarily, we note that Dean's contentions border on the frivolous since Green's right to testify in his own behalf was guaranteed by the Fifth and Sixth Amendments of the United States Constitution, as well as article I, section 15 of the state Constitution.

■ Contrary to Dean's argument, no *sua sponte* cautionary instruction on accomplice testimony (Pen. Code, § 1111) was required about codefendant Green's testimony. The record indicates that Green's testimony *was not offered or relied upon by the prosecution* but rather by the defense. Thus, such a cautionary instruction would have severely prejudiced Green's own case (*People* v. *Terry,* 2 Cal.3d 362, 398-399 [85 Cal.Rptr. 409, 466 P.2d 961]). We also note that no cautionary instruction was requested by Dean at trial.

The record also reveals that Green's testimony implicating Dean in the crimes was adequately corroborated by all of the evidence pertaining to Dean and by the People in their case-in-chief. Aside from Dean's confession, there was the testimony of Dunn, who saw Dean at juvenile hall with Green shortly before the commission of the crimes.

■ Furthermore, Green, a percipient witness to all of the events surrounding the crimes, was qualified to present evidence solely about Dean's role and participation. Green's personal observations were relevant to numerous material factual issues at trial and possessed immense probative value on all material issues (Evid. Code, §§ 210, 351).

The record also does not support Dean's assertion that Green's responses on cross-examination were beyond the scope of his direct testimony. ■ Once Green had voluntarily discussed the circumstances of the commission of the crimes on direct, the prosecution was entitled to explore the identical subject matter in much greater detail (Evid. Code, §§ 761, 773, subd. (a)). The record also indicates that no objections on this ground were made by Dean. Thus, Dean has no basis for raising this matter for the first time on appeal (Evid. Code, § 353, subd. (a)).

Next we note that the People, with commendable objectivity, concede that the judgment as to each defendant must be modified to conform to

the prohibition against double punishment (Pen. Code, § 654). Accordingly, we deal with this issue summarily. The record reveals that the court sentenced each defendant to a term in state prison on each of the (three) counts: attempted murder (Pen. Code, § 664), kidnaping for the purpose of robbery (Pen. Code, § 209, subd. (b)), and robbery (Pen. Code, § 211). The record indicates that execution of each prison sentence imposed on the attempted murder and robbery counts was stayed; no stay was imposed as to the sentence for the aggravated kidnaping (Pen. Code, § 209).

The People concede that all three crimes were part of one indivisible transaction and that the primary criminal objective of each defendant was to rob the victim of her purse and vehicle. ■ Accordingly, the kidnaping and the attempted murder were incidental to the robbery and were perpetrated to facilitate a successful getaway with the proceeds of the robbery. Thus, the superior court erred by imposing prison sentences as to each of the three convictions, even though the execution of the attempted murder and robbery terms was stayed (*People* v. *Laster,* 18 Cal.App.3d 381, 393-395 [96 Cal.Rptr. 108]; *People* v. *Panky,* 82 Cal.App.3d 772, 781-784 [147 Cal.Rptr. 341]; contrast *People* v. *Guevara,* 88 Cal.App.3d 86, 91 [151 Cal.Rptr. 511]). The proper procedure, pursuant to Penal Code section 654 is to stay *imposition* of sentence as to two of the convictions, with the stay to become permanent upon the completion of the sentence imposed as to the third conviction (*Panky, supra,* 82 Cal.App.3d at pp. 783-784). Accordingly, each judgment of conviction must be modified to stay imposition of sentence as to the convictions for attempted murder and robbery.

However, Dean is wrong in urging that the court also should have stayed the sentence for the attempted murder and kidnaping convictions, and sentenced him only for the robbery. The sentence established for the aggravated kidnaping conviction (Pen. Code, § 209, subd. (b)), life without possibility of parole, was more onerous than that established either for the robbery (Pen. Code, § 213, two, three, four years), or the attempted murder (Pen. Code, § 664, five, six, seven years). Dean was entitled to have imposition of sentence stayed as to the *less* onerous of the multiple terms of imprisonment (*People* v. *Laster, supra,* 18 Cal.App.3d, p. 395; *People* v. *Atkins,* 53 Cal.App.3d 348, 359 [125 Cal.Rptr. 855]). As the term for the aggravated kidnaping (Pen. Code, § 209) was the most severe, the court properly did not stay the sentence on the kidnaping count.

Finally, we turn to Green's contention that he is entitled to have the prohibition against parole stricken from the judgment pursuant to Penal Code section 1170.2[14] as to the aggravated kidnaping count. As the instant offenses were committed on November 3, 1976, the defendants were sentenced pursuant to the Indeterminate Sentence Law[15] which provided a punishment of life imprisonment without possibility of parole if the victim of the kidnaping or robbery suffered bodily harm.

Subsequently, Penal Code section 209 was amended (effective Aug. 11, 1977) so that after that date, kidnaping for the purpose of robbery is punishable by "imprisonment in the state prison for life *with* possibility of parole" (italics added). Thus, the existence of bodily injury is no longer a factor relevant to punishment for the base offense. The language of Penal Code section 1170.2, subdivision (e), quoted below,[16] clearly indicates that as to parole eligibility, the new reduced penalty for section 209 convictions is to be applied retroactively. Accordingly, if the instant kidnaping had been committed after July 1, 1977, defendants would have suffered for their convictions of aggravated kidnaping a penalty of life imprisonment *with* possibility of parole. Thus, they are entitled to such a mitigation of their respective ISL sentences which precluded the possibility of parole under the then applicable law.

However, the judgments here need not be modified to reflect defendants' eventual *eligibility for parole* pursuant to the new sections 209 and 1170.2, subdivision (e). *People* v. *Alcala,* 74 Cal.App.3d 425 [141 Cal.Rptr. 442], held at page 427, that Penal Code section 1170.2, subdivision (e) is to be implemented solely by the CRB. As indicated above, the abstracts of judgment do not mention parole eligibility and, therefore, require no *correction.* If and when the CRB fails to properly apply the section to defendants' terms for aggravated kidnaping, habeas corpus is available to them. It follows that they are not entitled to relief from this court at this time (see also *People* v. *Superior Court* (*Gonzales*), 78 Cal.App.3d 134, 137-140 [144 Cal.Rptr. 89]).

[14]Penal Code section 1170.2 requires the newly created Community Release Board (CRB) to provide for a defendant's release "as provided for by this code," after considering various factors in aggravation or mitigation when the parole date is set (Pen. Code, § 3041, subd. (a)).

[15]The abstract of judgment contains only the standard ISL declaration that the punishment was imprisonment "for the term provided by law."

[16]Penal Code section 1170.2, subdivision (e) provides: "In the case of any inmate who committed a felony prior to July 1, 1977, who would have been sentenced under Section 1168 if the felony was committed on or after July 1, 1977, the Community Release Board shall provide for release from prison as provided for by this code."

Each judgment of conviction is modified to stay imposition of sentence as to the convictions for attempted murder and robbery, with the stay to become permanent upon the completion of the sentence imposed as to the kidnaping conviction (*People* v. *Panky, supra,* 82 Cal.App.3d, pp. 783-784).

As so modified, each judgment of conviction is affirmed.

Rouse, J., and Miller, J., concurred.

Appellants' petitions for a hearing by the Supreme Court were denied September 12, 1979.