Filed 2/10/23  P. v. Delgado CA2/7

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SEVEN

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>JAVIER MONTES DELGADO,<br><br>    Defendant and Appellant | B318206<br><br>(Los Angeles County<br>Super. Ct. No. MA080979) |

APPEAL from a judgment of the Superior Court of Los Angeles County.  Robert G. Chu, Judge.  Affirmed.

William Paul Melcher, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Susan Sullivan Pithey, Senior Assistant Attorney General, David E. Madeo, Acting Supervising Deputy Attorney General, and Theresa A. Patterson, Deputy Attorney General, for Plaintiff and Respondent.

_____

## INTRODUCTION

A jury convicted Javier Montes Delgado on a single count of attempted carjacking (Pen. Code, §§ 664, 215, subd. (a)).[1] The court imposed a five-year prison sentence and ordered Delgado to "stay away" from the victim of the carjacking, Delgado's father. Delgado appeals the imposition of the protective order, arguing that no statute authorized the court to impose it. Alternatively, Delgado contends the order is unconstitutionally vague. We affirm.

## FACTUAL AND PROCEDURAL HISTORY

On March 16, 2021, Delgado's father, Javier Delgado, Sr. (Delgado, Sr.), discovered Delgado inside a car on Delgado, Sr.'s property. Delgado, Sr., having previously secured a protective order against Delgado, did not want Delgado on the property. The next day, Delgado confronted Delgado, Sr., threw part of a fence at him, threw his father to the ground, and threatened to "beat [him] up" if he did not give Delgado the keys to his truck. In the ensuing scuffle, Delgado acquired the truck keys, and Delgado, Sr. acquired injuries to his face, back and neck. Delgado, Sr. called 911. When sheriff's deputies arrived, Delgado, Sr. told the deputies Delgado had tried to take his truck. The deputies observed redness on Delgado, Sr.'s neck and chest.

On June 3, 2021, the People charged Delgado by information with one count of attempted carjacking (§§ 664, 215, subd. (a)), and two prior "strike" allegations pursuant to the

---

[1] Further undesignated statutory references are to the Penal Code.

Three Strikes law (§§ 667, subds. (b)-(i), 1170.12).  On December 9, 2021, in a bifurcated trial, a jury convicted Delgado on the attempted carjacking charge.  The court found the prior strike allegations true but struck one strike in the interest of justice.

On January 28, 2021, the court sentenced Delgado to a five-year prison term (one-half the middle term doubled).  In response to the court's inquiry, Delgado, Sr. requested a protective order.  The court then stated, "The court orders the defendant to stay 100 yards away from and have no contact with Javier Verdugo Delgado."  The court specified the no-contact order would last for 10 years.  The minute order stated, "A ten year criminal protective order regarding protected person Javier B. [*sic*] Delgado is signed and filed this date and deemed fully incorporated herein by reference."  The minute order also stated, "Obey the protective order issued in this or any other case" and "Defendant is served with a copy of the protective order in open court."[2]

Delgado timely appealed.

---

[2]     The abstract of judgment stated, "Obey protective order in this/any other case.  Stay away from Javier B. [*sic*] Delgado."

3

## DISCUSSION

A. *Standard of Review and Applicable Law*

We review statutory interpretation issues de novo. (*People v. Gonzalez* (2017) 2 Cal.5th 1138, 1141.) "'""As in any case involving statutory interpretation, our fundamental task here is to determine the Legislature's intent so as to effectuate the law's purpose. [Citation.] We begin by examining the statute's words, giving them a plain and commonsense meaning."'"" (*People v. Lewis* (2021) 11 Cal.5th 952, 961.) "'"[W]e look to 'the entire substance of the statute . . . in order to determine the scope and purpose of the provision . . . [Citation.]' [Citation.] That is, we construe the words in question '"in context, keeping in mind the nature and obvious purpose of the statute . . . ." [Citation.]' [Citation.] We must harmonize 'the various parts of a statutory enactment . . . by considering the particular clause or section in the context of the statutory framework as a whole."'"" (*Ibid.*)

"A claim that a sentence is unauthorized . . . may be raised for the first time on appeal, and is subject to judicial correction whenever the error comes to the attention of the reviewing court." (*People v. Dotson* (1997) 16 Cal.4th 547, 554, fn. 6.)

"'[T]he defendant . . . bears the burden to provide a record on appeal which affirmatively shows that there was error below, and any uncertainty in the record must be resolved against the defendant.'" (*People v. Moore* (2021) 68 Cal.App.5th 856, 866; see *People v. Green* (1979) 95 Cal.App.3d 991, 1001 ["'all presumptions and intendments are in favor of the regularity of the action of the lower court in the absence of a record to the contrary'"].)

B. *The Court Issued a Valid Protective Order*

Delgado contends that the court did not issue a written protective order, lacked any statutory basis to issue an order (oral or written), and even if it did have a statutory basis and did issue a written order, the one it issued suffers from unconstitutional vagueness. The People contend the court issued a sufficiently specific, statutorily authorized, written protective order. Although the actual protective order does not appear in the appellate record, the record supports the People's interpretation.

1. *The court issued a written protective order*

Citing the court's statements in open court, in his opening brief Delgado argued that the court only issued an oral protective order, not a written one. He softened that argument on reply in light of the People's citations to the record, with good reason. The record confirms the court did issue a written protective order. The minute order referred to a "signed and filed" 10-year protective order. The minute order also reflected Delgado was "served with a copy of the protective order in open court." The references to a signed and filed order, a copy of which was served on Delgado, referred to a written protective order. Simply because the court chose also to reiterate the important provisions of that order orally with Delgado in court does not overcome the presumption in favor of the "regularity of the action of the lower court." (*People v. Green, supra,* 95 Cal.App.3d at p. 1001.)

2. *The relevant statutes allowed the court to issue the protective order*

Delgado contends the court erred when it imposed a protective order. He argues that "section 136.2, subdivision (i)(1)

5

does not apply because this was not a domestic violence case." He further argues the court can issue a section 136.2, subdivision (i)(1), protective order only against someone "'within the household.'" Delgado misunderstands the breadth and meaning of section 136.2.

As Delgado rightly states, a court lacks statutory authority to impose a domestic violence protective order pursuant to section 136.2, subdivision (i), if the conviction does not involve a "qualifying domestic violence offense." (*People v. Garcia* (2022) 76 Cal.App.5th 887, 901.) However, section 136.2, subdivision (i)(1), allows the issuance of a no-contact order whenever "a criminal defendant has been convicted of a crime involving domestic violence" against certain defined persons, including, as relevant here, a father. (Fam. Code, § 6211, subd. (f).) Qualifying conduct includes "molesting, attacking, striking, stalking, threatening . . . or disturbing the peace of the other party." (Fam. Code, § 6320, subd. (a).) Disturbing the peace means ""*conduct that destroys the mental or emotional calm of the other party*."" (*People v. Mani* (2022) 74 Cal.App.5th 343, 360 [italics in original].)

Delgado's conduct easily falls within these parameters. According to Delgado, Sr.'s testimony at trial, corroborated by the investigating officer's observations of Delgado, Sr.'s injuries, Delgado attacked, struck, and/or threatened his father, and certainly disturbed his peace.

After asserting in his opening brief that section 136.2, subdivision (i)(1), did not apply because "this was not a domestic violence case," Delgado concedes on reply that his conviction "meets the first criteria of a 'domestic violence crime,'" thereby authorizing the court to consider issuing a 10-year no-contact

order.  However, relying on *People v. Race* (2017) 18 Cal.App.5th 211, 219 (*Race*), Delgado asserts Delgado, Sr. does not qualify as a "victim" because section 136.2 requires the victim and the perpetrator to reside "within the household."

Neither section 136.2 nor *Race* includes such a restriction. To the contrary, by incorporating the domestic violence definition in Family Code section 6211, section 136.2, subdivision (i)(1), expressly contemplates orders protecting several categories of victim who likely would *not* reside in the same household as the domestic violence defendant.  These categories include a "former spouse," a "former cohabitant," and someone with whom the defendant had a past "dating or engagement relationship."  (Fam. Code, § 6211.)  As one (common) example, based on these provisions victims might secure a protective order against someone they had not dated in years, and with whom they certainly do not live.  Moreover, the statutory definition of victim has no "household" requirement:  "As used in the chapter containing section 136.2, subdivision (i)(1), '"[v]ictim" means any natural person with respect to whom there is reason to believe that any crime as defined under the laws of this state . . . is being or has been perpetrated or attempted to be perpetrated.'  (§ 136, subd. (3).)."  (*People v. Delarosarauda* (2014) 227 Cal.App.4th 205, 211 (*Delarosarauda*);  accord, *People v. Beckemeyer* (2015) 238 Cal.App.4th 461, 465 (*Beckemeyer*).)  Based on this plain statutory language, Delgado, Sr. unquestionably qualifies as a "victim."  Delgado attacked him, caused injury to multiple areas of his body, threatened to "beat him up," tried to take his truck, and, at a minimum, disturbed his peace.  Nothing in the language of section 136.2 required Delgado, Sr. to live in the same household with Delgado to qualify for a protective order.

That leaves *Race.* In *Race, supra*, 18 Cal.App.5th 211, the defendant pleaded no contest to attempted lewd and lascivious acts on a child (his niece) under the age of 14 (§§ 664, 288, subd. (a)). A different count, alleging the same conduct against defendant's daughter, was dismissed as part of the plea agreement. The plea agreement included a waiver pursuant to *People v. Harvey* (1979) 25 Cal.3d 754, 758, allowing the court to consider the dismissed count for purposes of sentencing and restitution. (*Race,* at p. 215.) At sentencing, the court issued a protective order prohibiting the defendant from contacting both the niece and the daughter because the daughter had reported extensive sexual abuse perpetrated on her by her father, the defendant.

On appeal, defendant contended the daughter did not qualify as a "victim" for purposes of section 136.2, subdivision (i)(1). The court rejected that argument: "We hold that section 136 defines a 'victim' in a broad enough manner in which to include a victim of a charged count of which defendant does not stand convicted so long as the court had some competent evidence before it with which to conclude there was reason to believe the individual was a victim of a broadly defined domestic-violence-related offense involving harm or attempted harm such that a criminal protective order should be issued." (*Race, supra,* 18 Cal.App.5th at p. 216.) The "household" language appears later in the opinion, after the *Race* court surveyed several other cases, including *Delarosarauda* and *Beckemeyer* (neither of which mentions a "household" requirement). Summarizing those cases in light of the specific facts at issue in *Race,* the court stated the "rule" that the term "'victim'" "must be construed broadly to include any individual against whom there is 'some evidence'

8

from which the court could find the defendant had committed or attempted to commit some harm within the household." (*Race,* at p. 219.)

*Race* does not aid our analysis here for at least two reasons. First, the court in *Race* addressed an argument not made and not relevant here—whether it could issue a protective order naming a victim in a dismissed count. Second, the *Race* court did *not* address the argument Delgado does make here, that section 136.2, despite its clear language, somehow includes a mandate that defendant and victim reside in the same household. Because *Race* involves different facts and legal issues, it does not mean what Delgado says it does or help advance his argument.

Accordingly, the court properly considered, as section 136.2 requires, a protective order requiring Delgado to stay away from, and have no contact with, Delgado, Sr.

3. *The protective order, combined with the court's admonition, is not impermissibly vague*

Delgado finally argues that even if the court had the authority to issue the protective order, the one it issued is vague because it lacks a "scienter requirement." Both parties analogize to cases involving probation conditions. However, the cases on which Delgado relies differ factually. For example, in *People v. Lopez* (1998) 66 Cal.App.4th 615, the court modified a probation condition that the defendant not associate with gang members or display any gang insignia. In that case, the defendant could not necessarily know if indicia he displayed would be gang related or if the people with whom he associated had any gang affiliation. Accordingly, the court modified the "displaying" and "associating" conditions to include a knowledge requirement, so that the

9

defendant could not knowingly display indicia of gang membership or associate with persons "known to" the defendant to be gang members. (*Id.* at pp. 628-629.) Similarly, in *In re Victor L.* (2010) 182 Cal.App.4th 902, the court added a knowledge requirement to a probation condition prohibiting the defendant from remaining in a "'building, vehicle or in the presence of any person where dangerous or deadly weapons or firearms or ammunition exist.'" (*Id.* at pp. 912-913.) Because the defendant could not know if someone in the same building had a concealed firearm, for example, the court modified the condition based on overbreadth concerns.

No such infirmity infects the protective order here. The void-for-vagueness doctrine, "which derives from the due process concept of fair warning, bars the government from enforcing a provision that 'forbids or requires the doing of an act in terms so vague' that people of 'common intelligence must necessarily guess at its meaning and differ as to its application.'" (*People v. Hall* (2017) 2 Cal.5th 494, 500.) "To withstand a constitutional challenge on the ground of vagueness, a probation condition must be sufficiently definite to inform the probationer what conduct is required or prohibited, and to enable the court to determine whether the probationer has violated the condition." (*Ibid.*)

Delgado obviously knows his father, a fact that distinguishes this case from cases like *In re Victor L., supra,* 182 Cal.App.4th 902 and *People v. Lopez, supra,* 66 Cal.App.4th 615, where the prohibited conduct may not be clear to the defendant in any given situation. Indeed, since *In re Victor L.,* courts have split as to whether probation conditions imposed without an express knowledge requirement necessitate modification to add one. (Compare *People v. Patel* (2011)

10

196 Cal.App.4th 956, 960 [frustrated with "dismaying regularity" with which the court needed to address requests to modify probation conditions to add knowledge requirement, and in light of "substantial uncontradicted body of case law" that requires proof of scienter for probation violations involving "presence, possession, association, or other actions," the court would "now give notice" going forward that it would construe all such probation conditions to have a knowledge requirement] with *People v Pirali* (2013) 217 Cal.App.4th 1341, 1351 [declining to follow *Patel* and modifying probation condition restricting internet access to include a knowledge requirement].) These cases generally do not involve protective orders but rather undefined groups of people or categories of conduct where a probationer could (arguably) unwittingly violate a probation condition restricting conduct (e.g., accessing the internet, being near guns that could be concealed). (*In re Sheena K.* (2007) 40 Cal.4th 875, 890 [probation condition that defendant not associate with anyone "'disapproved of by probation'" was unconstitutionally vague unless the court added a knowledge requirement because defendant could not otherwise know from whom defendant must stay away unless the probation department provided that information].)

A no-contact order protecting an individual differs from a probation condition because the defendant typically knows the person identified, and certainly did in this case. For that reason, among others, courts interpret a no-contact order that expressly protects a victim of a prior act of domestic violence to imply a knowledge requirement. (See *People v. Rodriguez* (2013) 222 Cal.App.4th 578, 594 ["No reasonable law enforcement officer or judge can expect probationers to know where their victims are

at all times. The challenged condition does not require defendant to stay away from all locations where the victim might conceivably be. It requires defendant to remove himself ('Stay away at least 100 yards . . . .') when he knows or learns of a victim's presence."], disapproved on other grounds by *People v. Hall, supra*, 2 Cal.5th 484; see also *People v. Hartley* (2016) 248 Cal.App.4th 620, 635 ["The addition of an express knowledge requirement [to the stay-away order] would only make explicit what already is implicit: Hartley must be aware of or have knowledge of the driver in order to personally–or by other means–contact him."].)

We also disagree with Delgado that the term "no contact" suffers from any impermissible ambiguity. The record strongly suggests the court served Delgado with a standard form protective order, which would specify that contact cannot be through a third party or by electronic, written, or other means. In any event, no contact means no contact. The protective order does not need to delineate all prohibited forms of contact to pass constitutional muster. The phrase gives Delgado "fair warning" as to what he may not do and explains precisely the prohibited conduct. (*People v. Hall, supra,* 2 Cal.5th at p. 500.) We find no ambiguity that warrants modification.

## DISPOSITION

The judgment of the superior court is affirmed.


HOWARD, J.*

We concur:


PERLUSS, P. J.


SEGAL, J.

---

\*      Judge of the Marin County Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.