Filed 5/13/21

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| THE PEOPLE, | B304567 |
| Plaintiff and Respondent, | (Los Angeles County Super. Ct. Nos. 319016, 319060) |
| v. | |
| PHILLIP CHARLES FORTMAN, | |
| Defendant and Appellant. | |

APPEAL from an order of the Superior Court of Los Angeles County, James D. Otto, Judge. Reversed and remanded.

Johanna Pirko, under appointment by the Court of Appeal, for Defendant and Appellant.

Xavier Becerra, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Susan Sullivan Pithey, Assistant

Attorney General, Scott A. Taryle and Idan Ivri, Deputy Attorneys General, for Plaintiff and Respondent.

\* \* \* \* \* \*

When determining whether to vacate a defendant's murder conviction that may rest on a theory of vicarious liability later invalidated by Senate Bill No. 1437 (2017-2018 Reg. Sess.) (SB 1437), the conviction must stand if the prosecution proves, beyond a reasonable doubt, that the conviction is valid under a still-viable theory of liability.  (Pen. Code, § 1170.95, subds. (d)(3) & (a).)[1]  Does this require the prosecution to convince the trial court hearing the petition to conclude that *it* would convict defendant on a still-viable theory, or merely to convince that court that a reasonable jury *could* convict defendant on a still-viable theory?  The Court of Appeal is split, with a majority following the former rule and a lone voice following the latter. (Compare *People v. Lopez* (2020) 56 Cal.App.5th 936, review granted Feb. 10, 2021, S265974 (*Lopez*); *People v. Rodriguez* (2020) 58 Cal.App.5th 227, review granted Mar. 10, 2021, S266652 (*Rodriguez*); *People v. Clements* (2021) 60 Cal.App.5th 597 (*Clements*), review granted Apr. 28, 2021, S267624; *People v. Harris* (2021) 60 Cal.App.5th 939 (*Harris*), review granted Apr. 28, 2021, S267802 with *People v. Duke* (2020) 55 Cal.App.5th 113, review granted Jan. 13, 2021, S265309 (*Duke*).)  Our Supreme Court will resolve this split in *Duke*, but we join the growing chorus that requires an independent finding by the trial court, and we publish because our analysis adds a new harmony.

---

[1]      All further statutory references are to the Penal Code unless otherwise indicated.

2

Because the trial court in this case did not make an independent finding, we reverse and remand for a new hearing.

### FACTS AND PROCEDURAL BACKGROUND

I. **Facts**

A. *The underlying crime*

On the last Saturday in January 1966, Phillip Fortman (defendant) and Tim Hartman (Hartman) used the $4 they had earned that day soliciting contributions at the Purple Heart Veteran's Service to buy themselves cigarettes and cheap wine. While drunk, they saw an elderly man on the street and decided to "roll him" (that is, to take what money he had). They viciously attacked him by repeatedly punching and kicking him, and then turned out his pockets and discovered he had no money. The man died from his injuries a few days later.

B. *Charging, conviction and appeal*

The People charged defendant and Hartman with (1) murder (§ 187), and (2) attempted second degree robbery (§ 211). The jury was instructed that each defendant could be liable for murder (1) as a person who acted with malice (that is, as the actual killer or a person who, with intent to kill, aided and abetted the actual killer), or (2) on a felony-murder theory (that is, on the theory that they jointly committed the felony of robbery and thus were jointly liable for the murder resulting from that robbery), or (3) on a natural and probable consequences theory (that is, on the theory that they aided and abetted one another to commit robbery and are jointly liable for a murder that is the "ordinary and probable effect of the pursuit of" the robbery). The jury convicted defendant (and Hartman) of first degree murder and attempted second degree robbery. The court sentenced defendant to life in prison for the murder and imposed a

suspended sentence on the attempted robbery. We affirmed defendant's convictions and sentence in a published decision. (*People v. Fortman* (1967) 257 Cal.App.2d 45.)

## II. Procedural Background

On January 14, 2019, defendant filed a petition seeking resentencing under section 1170.95. In the form petition, defendant checked the boxes for the allegations that he had been charged with murder, that he was convicted "pursuant to the felony murder rule or the natural and probable consequences doctrine," and that his murder conviction would be invalid under the "changes made to Penal Code §§ 188 and 189, effective January 1, 2019." The People opposed the petition on the ground that (1) section 1170.95 is unconstitutional, and (2) defendant is ineligible for relief as a matter of law because he (a) was the actual killer, (b) directly, and with the intent to kill, aided and abetted the actual killer, or (c) was a major participant who acted with reckless indifference to human life. After receipt of defendant's reply, the court convened a "hearing" at which it ruled that defendant was "ineligible" for relief under section 1170.95 because, "based on the record of conviction," defendant "could have been very well . . . convicted under [the] theories of murder that[ have] continued to exist after the passage of SB 1437."[2]

---

[2]     Although the trial court hedged on whether the purpose of the hearing was to determine whether to issue an order to show cause (OSC) or instead to assess whether defendant was eligible for resentencing following the entry of an OSC, the court's ultimate finding of defendant's ineligibility for relief indicates that it was the latter. (Accord, *People v. Gentile* (2020) 10 Cal.5th 830, 853 (*Gentile*) [purpose of post-OSC hearing is to "determine

4

Defendant filed this timely appeal.

## DISCUSSION

Defendant argues that the court erred in denying his petition for relief under section 1170.95 because the standard it applied—looking to whether a jury *could* still convict him on a viable theory—was incorrect. This argument presents an issue of statutory construction, which we review independently. (*Christensen v. Lightbourne* (2019) 7 Cal.5th 761, 771.)

With one narrow exception,[3] SB 1437 effectively eliminates murder convictions premised on any theory of vicarious liability—that is, any theory by which a person can be convicted of murder for a killing committed by someone else (such as the felony-murder theory or the natural and probable consequences theory[4])—unless the People also prove that the non-killer defendant personally acted with the intent to kill or was a major

whether to vacate the murder conviction" or whether the petitioner is "ineligible" for such relief].)

[3] A murder conviction premised on vicarious liability is still permissible if the "victim is a peace officer . . . killed while in the course of [his or her] duties" and if "the defendant knew or reasonably should have known" those facts. (§ 189, subd. (f).)

[4] Under the felony murder theory, a defendant who participates in a felony with others may be held liable for a homicide committed by another "while committing [that felony]" "without the necessity of further examining the [non-killer] defendant's mental state." (*People v. Chun* (2009) 45 Cal.4th 1172, 1182). Under the natural and probable consequences theory, a defendant who aids and abets a felony may be held liable for a homicide committed by another if that homicide was "a natural and probable consequence" of the felony he aided and abetted. (*People v. Hardy* (2018) 5 Cal.5th 56, 92.)

participant who acted with reckless disregard to human life. (§§ 188, 189, subds. (e), (f), 1170.95.) SB 1437 effectuates this change prospectively, and does so by modifying the statutes defining murder. (§§ 188, 189, subds. (e), (f); *Clements*, *supra*, 60 Cal.App.5th at p. 610.) SB 1437 also effectuates this change retroactively, and does so by creating an "exclusive" statutory procedure—set forth in section 1170.95—by which persons may seek to invalidate prior murder convictions premised on a theory of vicarious liability. (§ 1170.95; *Gentile*, *supra*, 10 Cal.5th at pp. 852-853; *Clements*, at p. 611.)

Section 1170.95 sets forth a two-step procedure. In the first step, the petitioner seeking to vacate a murder conviction must make a "prima facie showing" of entitlement to relief by establishing that (1) the conviction was based on a charging document that "allowed the prosecution to proceed under a theory of felony murder or murder under the natural and probable consequences theory," (2) the petitioner was convicted of first or second degree murder, and (3) the petitioner "could not be convicted of first or second degree murder because of the changes" made by SB 1437 to the statutes defining murder. (§ 1170.95, subds. (a), (c).) If this first step is met, the second step is for the trial court to issue an OSC and convene a hearing "to determine whether the petitioner is entitled to relief" under section 1170.95; at that hearing, the prosecution bears "the burden" of "prov[ing], beyond a reasonable doubt, that the petitioner is ineligible" for section 1170.95 relief. (*Id.*, subds. (d)(1) & (d)(3).) At that hearing, the prosecutor and petitioner may rely on "the record of conviction or offer new or additional evidence . . . ." (*Id.*, subd. (d)(3).)

This appeal presents the question:  What showing must the prosecution make in order to "prove, beyond a reasonable doubt, that the petitioner is ineligible" for relief under section 1170.95, subdivision (d)(3)?

The plain text of section 1170.95 does not expressly define when a petitioner is "ineligible" for section 1170.95 relief under subdivision (d)(3) and implicitly offers two possible answers.

On the one hand, "ineligibility" for relief under subdivision (d)(3) could borrow from subdivision (a)'s requirements for when a petitioner has made a prima facie showing of eligibility for relief.  Because a prima facie showing under subdivision (a) turns in part on whether the petitioner "*could not* be convicted" of murder after SB 1437, ineligibility for relief under subdivision (d)(3) would mean the opposite—namely, that the petitioner *could* be convicted of murder after SB 1437.  And because this standard looks a lot like the standard appellate courts use in assessing whether a conviction is supported by substantial evidence (e.g., *People v. Ochoa* (1993) 6 Cal.4th 1199, 1206 [looking to whether "a rational trier of fact *could* find the defendant guilty beyond a reasonable doubt"], italics added), subdivision (d)(3) could be read to adopt a "substantial evidence"-like burden that requires the prosecution merely to prove that a rational jury *could* still find the defendant guilty of murder on a still-valid theory of liability.  This reading does not *entirely* align with "substantial evidence" review, however, because unlike an appellate court conducting substantial evidence review of a conviction, the trial court examining the evidence under subdivision (d)(3) (1) is not required to view the evidence in light most favorable to the murder conviction (cf. *Ochoa,* at p. 1206), and (2) may consider "new or additional evidence" (cf. *People v.*

7

*Hubbard* (2016) 63 Cal.4th 378, 392). This is the reading adopted by *Duke*, *supra*, 55 Cal.App.5th at p. 123.

On the other hand, subdivision (d)(3) tasks the prosecution with proving the petitioner's "ineligibility" for section 1170.95 relief "beyond a reasonable doubt." Because the "beyond a reasonable doubt" language refers to a well-established standard of proof (see Evid. Code, § 115), and because "'[t]he function of a standard of proof . . . is to 'instruct the *factfinder* concerning the degree of confidence our society thinks he [or she] should have in the correctness of the factual conclusions for a particular type of adjudication'" (*Addington v. Texas* (1979) 441 U.S. 418, 423, quoting *In re Winship* (1970) 397 U.S. 358, 370 (conc. opn. of Harlan, J.), italics added), section 1170.95 could be read to assign the trial court hearing the section 1170.95 petition the task of serving as an independent factfinder determining whether, in its view, the evidence set forth in the record of conviction as well as any other evidence the parties elect to present establishes, beyond a reasonable doubt, the petitioner's guilt of murder on a still-valid theory. This is the reading adopted by *Lopez*, *supra*, 56 Cal.App.5th at p. 951, *Rodriguez, supra*, 58 Cal.App.5th at pp. 230-231, *Clements*, *supra*, 60 Cal.App.5th at p. 603, and *Harris*, *supra*, 60 Cal.App.5th at pp. 952-953.

Because the plain text of section 1170.95 is ambiguous on this point, we look to the purpose animating section 1170.95 as well as to other canons of statutory construction. (*People v. Cornett* (2012) 53 Cal.4th 1261, 1265.) In our view, these sources convince us that subdivision (d)(3) turns a petitioner's entitlement to relief on whether the trial court itself finds, beyond a reasonable doubt, that defendant is guilty of murder on a still-valid theory of liability. They do so for two reasons.

8

First, this is the outcome most consistent with our Legislature's stated purpose to extend SB 1437's new rules in an equitable fashion both prospectively *and* retroactively. In the introductory legislative "findings" of SB 1437, our Legislature declared that its purpose was to more closely align the punishment for murder with one's "own level of individual culpability." (Stats. 2018, ch. 1015, § 1(d), (e); *Gentile, supra*, 10 Cal.5th at pp. 845-846 [so noting].) What is more, by simultaneously amending the statutes defining murder and creating the procedural mechanism in section 1170.95 to revisit already existing murder convictions, our Legislature confirmed that this purpose was designed to benefit "both past and future offenders." (*Rodriguez, supra*, 58 Cal.App.5th at p. 240.) Where, as here, there is an avowed purpose to grant ameliorative relief "prospective[ly] and retrospective[ly]," the best way to effectuate that purpose is to give the requirements for *all* relief a "parallel construction." (*People v. Frierson* (2018) 4 Cal.5th 225, 236 (*Frierson*).) In *Frierson*, for example, our Supreme Court held that a voter-enacted statute that required the People to prove eligibility for a "third strike" sentence beyond a reasonable doubt on a prospective basis should be construed to require the People to prove past offenders' ineligibility by the same standard of proof—namely, beyond a reasonable doubt. (*Id.* at pp. 230-239.)

This principle of parallel construction here leads ineluctably to the conclusion that the People must convince the trial court, *as an independent trier of fact*, that the petitioner is guilty of murder on a still-valid theory beyond a reasonable doubt. If the People may obtain a murder conviction under the amended statutes in the future only by proving beyond a reasonable doubt that the defendant was the actual killer, acted

with the intent to kill or was a major participant acting with reckless indifference to human life, then section 1170.95 should be read to require the People to preserve a past murder conviction by proving any of those same facts to the trier of fact beyond a reasonable doubt. Under this reading, the sole difference between the two showings is that the showing to obtain future convictions must be made to a jury, while the showing to preserve past convictions may be made to the court; however, that difference is solely and simply because the constitutional right to a jury trial does not attach in the latter situation, where what is at issue is a possible entitlement to a reduced sentence rather than the initial imposition of criminal liability. (*People v. Perez* (2018) 4 Cal.5th 1055, 1063-1064; *People v. Anthony* (2019) 32 Cal.App.5th 1102, 1156-1157.)

This principle also illustrates why the contrary reading of section 1170.95 adopted by *Duke* is inconsistent with the statute's purpose. If, as *Duke* holds, the People may preserve a past murder conviction merely by showing that a reasonable jury *could* find the petitioner guilty on a still-valid theory, parallelism would dictate that the People should be able to obtain a murder conviction in the future by convincing a jury beyond a reasonable doubt that it would be rational for some other jury to find that the defendant was the actual killer, acted with the intent to kill or was a major participant acting with reckless indifference to human life—even if *that jury itself* would not so find. This reading would disserve our Legislature's stated purpose of better aligning the punishment for murder with individual culpability both prospectively and retroactively. Although following *Duke* would disserve that purpose only retroactively, it disserves it just the same.

10

Second, construing section 1170.95 to mandate that the trial court independently find the defendant guilty on a still-valid theory avoids what we view as the "anomalous or absurd consequences" flowing from the contrary reading. (*Horwich v. Superior Court* (1999) 21 Cal.4th 272, 280.) As noted above, the contrary reading would require the prosecution to prove beyond a reasonable doubt that a rational jury—considering the evidence presented to the prior jury as well as any "new or additional evidence" no jury has ever considered—could still find the defendant guilty on a still-valid theory beyond a reasonable doubt. This standard is a heretofore unseen, Frankenstein-like construct that cobbles together bits and pieces from the substantial evidence appellate review standard as well as the beyond a reasonable doubt standard of proof. While it is certainly within our Legislature's purview to breathe life into such a beast, we are reluctant to do so in the "[a]bsen[ce of] a clear expression of legislative intent" (e.g., *People v. George* (1984) 157 Cal.App.3d 1053, 1058-1059), and the circuitous statutory hopscotch supporting this construction does not in our view constitute such a clear expression.

For these reasons, we join with *Lopez*, *Rodriguez*, *Clements* and *Harris* in holding that, at the hearing contemplated by section 1170.95, subdivision (d), the People are required to prove *to the trial court* beyond a reasonable doubt that the petitioner is guilty of murder on a theory of murder valid after SB 1437's enactment. Because the trial court in this case did not apply this standard, we reverse its order and remand for a new hearing at which the People may seek to prove to the trial court beyond a reasonable doubt that defendant was the actual killer, aided and

11

abetted the actual killer with the intent to kill, or was a major participant who acted in reckless disregard for human life.

**DISPOSITION**

The order denying defendant's section 1170.95 petition is reversed, and the matter remanded for a new evidentiary hearing pursuant to section 1170.95, subdivision (d).

**<u>CERTIFIED FOR PUBLICATION</u>.**

_____, J.

HOFFSTADT

We concur:

_____, P. J.

LUI

_____, J.

CHAVEZ

12